508 So.2d 1039 (1987)
Emanuel ALFORD
v.
STATE of Mississippi.
No. 56451.
Supreme Court of Mississippi.
March 18, 1987.
As Modified April 22, 1987.
Michael Adelman, Andalman, Adelman & Steiner, Hattiesburg, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Harold H. Brittain, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and DAN M. LEE and GRIFFIN, JJ.
*1040 DAN M. LEE, Justice, for the court:
Emanuel Alford was found guilty as charged by the jury in the Circuit Court of Marion County for the May 22, 1983 shooting death of Gillman Giles and was sentenced to life imprisonment in the custody of the Mississippi Department of Corrections. He appeals and assigns three errors in the trial court:
1. The Lower Court should have either directed a verdict of Not Guilty at the close of the State's case in chief or granted Appellant's peremptory instruction in light of the totality of the evidence in this case.
2. The Lower Court erred in admitting photographs which were of no probative value and unduly prejudicial.
3. The Lower Court erred in admitting the hearsay testimony of witness William E. Bullock.
For the reasons stated below, we affirm.

FACTS
This case presents us with an argument which resulted in gunplay and death. Gillman Giles, the deceased, was by all accounts uninvolved with the argument and the shooting but nonetheless suffered a fatal chest wound. Emanuel Alford, the defendant below and appellant here, claimed that he fired in self defense. A jury found otherwise.
The argument which led to Giles' death involved the members of the family who run Betty's Grocery on Mississippi Highway 35 in Marion County near the City of Columbia.
Alford had gone to the grocery on the afternoon of May 22, 1983, after hearing a report that his mother had been there earlier and been threatened with a gun. He had with him a .22 caliber rifle, later identified as the murder weapon, which he had obtained earlier in the day from his brother.
Alford argued with Deborah Cooper and Georgia Breland, sisters of the deceased and workers at the family-owned store, about the alleged incident with his mother. The argument moved outside where Johnny Breland, husband of Georgia Breland, got involved.
Breland testified that he only asked Alford what the problem was and said that they could settle it. He stated Alford responded "Yes, we can settle it. I'm going to kill you." At this point Alford reached for the rifle in the back of his automobile so Breland went into the grocery store to get the pistol kept under the store counter.
When Breland returned he said he approached Alford's car with the gun held at "ready" and Alford, who was sitting in his car, pulled out of the grocery store parking lot and drove off. Several people, including the victim, gathered in the parking lot during this exchange. The crowd apparently did not quickly disperse as Alford pulled away.
Alford did not go far, however. He drove to Highway 35 and stopped, about 200 feet from the store. There was conflicting testimony on who fired first, but it is clear that Alford pulled the .22-caliber rifle from the back seat of his automobile and began firing in the direction of the parking lot of Betty's Grocery. Gillman Giles fell fatally wounded near the outer store wall. He apparently died before reaching the hospital.
Breland was not the only man armed in the parking lot. He and Fred Willie "Buddy" Giles, brother of the deceased, both fired at Alford. However, the state produced three witnesses, including Breland, who testified that Alford fired first.
Alford testified in his own behalf. He maintained that he did not initially pull the rifle and that Breland and Buddy Giles fired first. He stated that he had stopped to call back to his girlfriend, who had followed him to the store with some other friends, to leave with him, when they began shooting at him. Alford fired several shots but stated he only fired at Breland and "Buddy" Giles. Six bullet casings were found along the road near where he fired.

LAW

I.

Did the Lower Court Err in Failing to Grant a Peremptory Instruction?
*1041 This appeal here is confined to the question of whether the trial court erred in failing to grant his request for a peremptory instruction at the close of all the evidence.
The statutory elements of the crime of murder as found in Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1986) are the killing of a human being 1) without authority of law, and 2) done with deliberate design to effect the death of the person killed, or any other human being.
Alford's main point on appeal is that his version of the events leading to the shooting required the granting of his peremptory instruction because his version was the only one worthy of belief.
This, of course, suggests our familiar rule that where the defendant is the sole eyewitness, his version, "if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by physical facts or by the facts of common knowledge." Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).
The record is clear that there were a number of witnesses to the shooting who contradicted Alford's testimony. The Weathersby rule has no application here and the trial court correctly denied the requested peremptory instruction on this ground. We also do not find that the state's case fails to pass muster under our general review of the sufficiency of the evidence. See Peoples v. State, 501 So.2d 424 (Miss. 1987); Bunkley v. State, 495 So.2d 1 (Miss. 1986); Weeks v. State, 493 So.2d 1280 (Miss. 1986); Jenkins v. State, 483 So.2d 1330 (Miss. 1986); Gavin v. State, 473 So.2d 952 (Miss. 1985). We find no merit to this assignment.

II.

Did the Trial Court Err in Admitting Photographs Depicting both the Victim on an Autopsy Table and Bullet Holes Found at the Shooting Scene?
Alford would have us find error in the admission at trial of a photograph of the victim's body taken as the body lay on the autopsy table. The photograph depicts the fatal bullet wound on the far left side of the victim's chest.
Admission of photographs of the deceased are generally within the discretion of the trial court. Cabello v. State, 471 So.2d 332, 341-42 (Miss. 1985); Sharp v. State, 446 So.2d 1008, 1009 (Miss. 1984).
Alford cites our cases stating that such photographs have no probative value and should not be admitted when the killing is not disputed and the corpus delicti and the victim's identify are established. Williams v. State, 354 So.2d 266 (Miss. 1978); Stevenson v. State, 325 So.2d 113 (Miss. 1975).
At the time the photograph was offered into evidence the killing had not been admitted. Though Alford later put on evidence admitting that he fired the fatal shot, Alford put the state to its proof concerning the killing. We are concerned with the probativeness of the photograph, Sharp, 446 So.2d at 1009, but we cannot say that the photograph totally lacked probative value at the time it was introduced.
The depiction of the location of the deceased's wounds was a useful evidentiary purpose, Stevens v. State, 458 So.2d 726, 729 (Miss. 1984); Clingon v. State, 293 So.2d 823 (Miss. 1974). Here the depiction of the wound was relevant to show that the deceased, Gillman Giles, was not facing the direction from which the shots were fired, thereby negating any defense that Giles was an aggressor from whom appellant had a right to defend himself. See Kelly v. State, 463 So.2d 1070 (Miss. 1985).
We hold that the trial court did not abuse its discretion because the photograph here did have some probative value.
Turning to Alford's complaint about photographs depicting bullet holes at and around Betty's Grocery, we again find no error.
As with the decision to admit other photographs, the decision to admit photographs depicting the crime scene are within the trial court's discretion. Kelly, 463 So.2d at 1074-75; Dufour v. State, 453 *1042 So.2d 337 (Miss. 1984); Harris v. State, 413 So.2d 1016 (Miss. 1982). There were many shots fired during this fatal incident, and we cannot say the trial court abused its discretion in allowing the photographs into evidence.

III.

Did the Trial Court Err in Admitting Hearsay Testimony From Witness William E. Bullock?
William E. Bullock, father-in-law of the deceased, was at Betty's Grocery the day of the shooting. He was allowed over objection to twice state that he heard someone in the crowd around Alford's car say that Alford had a gun. The second reference to the statement came when Bullock testified that after hearing this voice in the crowd he saw Johnny Breland go into the store to get a gun.
The second time witness Bullock related the following out-of-court statement:
A. I want to add to it, they said the man had a gun. He  that's what I  I heard them say he's got a gun, and that's when I seen Johnny run back to [the] store to get the  get the pistol.
The trial court ruled that the statement was admissible under the res gestae exception to the hearsay rule.
This testimony by Bullock may not be hearsay since it was offered only to show the reason Breland went to get a gun, and not to show that Alford actually had a gun. See Graves v. State, 492 So.2d 562, 565 (Miss. 1986); Gates v. State, 484 So.2d 1002, 1007-8 (Miss. 1986). We have concern with the admissibility of the statements; however, the error if any, was harmless in that the evidence was otherwise clear that Alford did have a gun. This assignment of error is denied.
Finding no reversible error after reviewing the record as made in the trial court below, the judgment of the Circuit Court of Marion County being a conviction of murder and a sentence to serve life in the custody of the Mississippi Department of Corrections, be and the same is hereby affirmed.
AFFIRMED.
WALKER, C.J., and ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.