# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-KA-00677-SCT

*STEVEN HARRISON, a/k/a STEVEN PAUL HARRISON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/26/97 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ANTHONY J. BUCKLEY |
| | WILLIAM B. SULLIVAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  PAT FLYNN |
| DISTRICT ATTORNEY: | JEANNENE T. PACIFIC |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/12/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/3/98 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. This is a direct appeal of Harrison's criminal conviction in the Circuit Court of Jones County, Mississippi, for Burglary of a Non-Residence. After a jury trial on the merits, Harrison was convicted of burglary of a non residence and sentenced to five (5) years in the custody of the Mississippi Department of Corrections. Although the circuit court erred in admitting into evidence inadmissible hearsay, based on the overwhelming weight of the evidence proving the required element of intent to steal, this case is affirmed.

¶2. Steven Harrison and a friend went to Lowery Creek Church on December 31, 1995, to do doughnuts in the parking lot when the car got stuck in the grass of the church. Harrison took the stand in his own defense and admitted to breaking into the church to use the telephone after his car got stuck in the mud, but he denied taking anything from the church or vandalizing it.

## I. THE COURT ERRED IN ALLOWING, OVER DEFENSE OBJECTION TO HEARSAY, THE POLICE OFFICER TO TESTIFY THAT AS PART OF HIS INVESTIGATION HE HAD

**BEEN TOLD WHAT ITEMS MAY HAVE BEEN MISSING.**

¶3. Harrison argues that impermissible hearsay was allowed and the evidence was prejudicial in that it was the only piece of evidence that the State offered to show Harrison's intent to steal when he broke into the church. The contested testimony while Officer Shoemake was on the witness stand is as follows:

> Shoemake: I found numerous rooms vandalized. I had asked some of the people at the church if they had found anything missing. They advised me --

> Mr. Sullivan: Object to hearsay.

> Q. Did you determine if anything was missing?

> A. Yes, sir.

> Mr. Sullivan: Object, unless he can show the proper predicate and that it wasn't hearsay.

> The Court: Overruled.

> Mr. Stricklen: He said he determined something was missing, Your honor.

> The Court: Overruled.

> A. *I was advised that they thought something was missing out of the auditorium, so I went to the auditorium and found where a dual cassette player had been taken out from under the podium, the preacher's podium.*

(emphasis added). Harrison contends that this statement was classic hearsay citing Mississippi Rule of Evidence 802. This rule provides, "Hearsay is not admissible except as provided by law."

¶4. Rule 801 provides the definition of hearsay as , "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss.R.Evid. 801(c). The statement by the church members was an out-of-court statement by persons other than the witness, Shoemake. Therefore, central to the correct determination of this assignment of error is whether or not the statement of the church members was offered for the truth of the matter asserted, namely that something was missing from the church.

¶5. The State argues that the statement that the church members said they believed something had been taken was offered not for the truth of the statement, but to show why Shoemake went into the auditorium, where he discovered for himself that the cassette player was missing. Consequently they assert that the statement was not hearsay. One case cited by the State is *Alford v. State*, 508 So.2d 1039 (Miss. 1987). That case is distinguishable from the case *sub judice* for the State incorrectly states in its brief the holding of the Court. There is a big difference between the word is and the word may. In *Alford* this Court stated, "This testimony by Bullock *may* not be hearsay since it was offered only to show the reason Breland went to get a gun, and not to show that Alford actually had a gun." *Id.* at 1042 (emphasis added). Although the Court did express its concern about the admissibility of the statement, it decided it was unnecessary to decide this issue because "the error if any, was harmless in that the evidence was otherwise clear that Alford did have a gun." *Id*. Likewise in this case, the evidence presented at trial to prove that Harrison intended to steal anything included this out of court statement by unidentified church members but also it included the

testimony of Officer Shoemake that he found a cassette deck missing from under the podium and the testimony about some type of home stereo equipment that one witness saw in the back of Harrison's car. Although it was an error to admit the out of court statement by the church member, the error was harmless in light of the other direct evidence presented at trial.

¶6. The State also contends that *Swindle v. State*, 502 So.2d 652, 657 (Miss. 1987) supports its contention that the statement was not hearsay. In *Swindle* the Court found that an officer's testimony as to the substance of his conversation with an informant was offered to show the reason for the officer's presence at the scene when it stated, "an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time . . . ." *Id.* at 657-58. It should also be noted that the Court found that, unlike the present case, the out of court declaration in *Swindle* "was not introduced for the purpose of proving the truth of the assertion . . .but to show why Marshall was at the tavern on the day in question. The truth of the statement by Crenshaw to Marshall was not in issue." *Id.* at 658 (*quoting McGowan v. State*, 375 So.2d 987, 990 (Miss. 1979)). In this case whether Harrison had the intent to steal when he broke into the church was at issue.

¶7. Finally, the State cites to *Gayten v. State*, 595 So.2d 409 (Miss. 1992). In *Gayten*, this Court found that the testimony of a police officer as to what an undercover agent said via a wire tap was not hearsay. *Gayten*, 585 So.2d at 415. This was because the statements were "clearly offered solely for the purpose of showing that they were said. Just as clearly, the fact that these statements were made indicates the nature of the transaction and, in fact, that there was a transaction. But the statements are not assertions which are important because they are true." *Id.* at 414. In contrast, the statement by unidentified church members was an assertion which if true would be important, for it tends to establish that Harrison or his partner or both did have intent to steal because something was missing.

¶8. "This rule of non-hearsay imports an objective test. The question is not the actual subjective state of mind of the prosecuting attorney, much less of the declarant, but rather a matter of how a reasonable objective observer would under the circumstances be likely to perceive the statement." *Turner v. State*, 573 So.2d 1335, 1338 (Miss. 1990). The statement testified to by Shoemake that he was "advised that they [the church members] thought something was missing out of the auditorium" when heard by the jury would be perceived as a statement proving that Harrison did in fact steal something out of the auditorium, the truth of the matter asserted. There is no reason for Officer Shoemake to explain why he went to the auditorium. *See Sample v. State*, 643 So.2d 524 (Miss. 1994). He could have testified to what he determined to be missing based on his first hand knowledge. The State also could have presented the declarant as a witness and asked him or her directly if they believed anything was missing from the church. This was not done. The hearsay statement by unidentified church members that Shoemake testified to was hearsay and should have been excluded as evidence.

¶9. We hold that the out of court statement by unidentified church members that was testified to by Officer Shoemake was introduced for the truth of the matter asserted and it should not have been admitted into evidence. However as discussed below, the error was harmless given the other evidence presented which proves the required element of intent to steal.

**II. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT OF NOT GUILTY, OR IN THE ALTERNATIVE, BY NOT GRANTING PEREMPTORY INSTRUCTION NO. D-1.**

**III. THE VERDICT OF THE JURY WAS AGAINST THE WEIGHT OF THE EVIDENCE AND EVIDENCED A BIAS OR PREJUDICE ON THE PART OF THE JURY AGAINST THE APPELLANT.**

### Standard of Review

¶10. The standard of review regarding a denial of a judgment notwithstanding the verdict, a peremptory instruction and a directed verdict are all the same. *Coleman v. State*, 697 So.2d 777, 787 (Miss. 1997). When explaining what this standard means the Court offered the following:

> Under this standard, this Court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. On the other hand if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required. The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

*Coleman*, 697 So.2d at 787-88 (*quoting* **Sperry-New Holland, a Div. of Sperry Corp. v. Prestage**, 617 So.2d 248, 252 (Miss. 1993)).

¶11. Harrison was indicted and convicted for the crime of burglary of a church pursuant to Miss. Code Ann. § 97-17-33(1994). There are two elements that must be proven in order to convict a person for the crime of burglary. These are "(1) an unlawful breaking and entering, and (2) the intent to commit some crime once entry has been gained." *Alford v. State*, 656 So.2d 1186, 1192 (Miss. 1995) (*citing* **Winston v. State**, 479 So.2d 1093 (Miss. 1985)). Both the physical act of entry and the intent to commit a crime must exist at the same time. *Davis v. State*, 611 So.2d 906, 911 (Miss. 1992). The indictment charged Harrison with the breaking and entering of the Lowery Creek Church with the felonious and burglarious intent to steal. Harrison admits the State proved the element of "breaking and entering" when Harrison entered the church unannounced. His contention is that the element of intent to steal was not proven beyond a reasonable doubt.

¶12. Harrison contends that there was no admissible evidence presented by the State that once inside the church, Harrison intended to steal anything or commit any other felony. He argues that the most he could be found guilty of under the indicted charge would be trespassing citing *Alford v. State*, 656 So.2d 1186 (Miss. 1995) (reversing charge of burglary, but affirming on the lesser included offense of trespass).

¶13. We find that the record does support the intent to steal even without the hearsay testimony as discussed *supra*. This Court has stated:

> Intent may be inferred "from the time and manner in which entry was made and the conduct of the accused after entry, intent is a state of mind seldom susceptible of direct proof absent a confession."

*Williams v. State*, 512 So.2d 666, 669 (Miss. 1987) (*quoting* **Butler v. State**, 217 So.2d 3, 5 (Miss. 1968)). Harrison admittedly broke into the church late at night but he testified that he just wanted to use the phone and that he did not take anything from the church. However, the church custodian testified to the location of the phones and that the phones in the church were in working order that night. Officer

Shoemake also testified that he observed that a cassette player was taken from the church and another witness testified to seeing some stereo equipment in the back of Harrison's car that did not belong to a car.

¶14. Breazeale, a neighbor who lives near the church went with Harrison to the church to help him get the car out of the mud. Breazeale testified that when he asked Harrison what they had been doing that Harrison told him that some friends broke into the church. Breazeale further testified that he viewed some type of home stereo equipment on the back floorboard of the vehicle but he did not ask Harrison or his friend about it. Breazeale returned the chain to O'Neil where apparently some discussion took place which prompted O'Neil to go to the church to investigate.

¶15. Murphy testified that when he arrived at the church, he found the back door open, glass broken, the refrigerator open and the contents spilled onto the floor and a copier in the pastor's study broken. Jones County deputy sheriff Shoemake testified that when he arrived at the church he went to the auditorium of the church, where he found that a cassette player had been taken from the podium. Shoemake stated that he went to a place about three miles from the church where Harrison's car had broken down and both Harrison and a friend were in the car. Shoemake further testified that Harrison "hollered out, hey, we did it" and when he asked what he did he admitted to breaking into the church to use the telephone. It was at this time that Harrison was arrested.

¶16. After Harrison's arrest but prior to trial, Harrison went to the church before the congregation and apologized for his actions. Mr. Murphy testified that Harrison told the congregation that he did break into the church and admitted to vandalizing it. Another member of the church testified that Harrison told the church "he was sorry for what he had done to the church and that he would do restitution and just asked the church to forgive him and he would not do it anymore." However the interim pastor, Mr. Ishee testified that when Harrison came before the church he did not offer to make amends and did not specifically admit to vandalizing the church, just that he had broke in and he was sorry for what he did.

¶17. This evidence taken as a whole would allow reasonable fair minded jurors to find that Harrison did have the necessary intent to steal to support the conviction of burglary without relying totally on the inadmissible testimony about what some church members told Shoemake.When considering the proper standard of review that must be applied, the evidence was sufficient to support the guilty verdict of burglary of a non dwelling and this assignment of error must be affirmed. When considering the evidence against Harrison that was properly before the jury for its consideration, the jury's verdict is affirmed.

## IV. THE INDICTMENT WAS VOID AS A MATTER OF LAW

¶18. Harrison argues that the indictment against him was insufficient because it did not say that goods were kept in the church for "use, sale, deposit, or transportation." Harrison failed to preserve this error for appeal by challenging the sufficiency of the indictment by demurrer. However, as Harrison contends, there is no waiver of such an issue where it is alleged that an essential element of a crime is omitted from an indictment. *Taylor v. State*, 214 Miss. 263, 58 So.2d 664 (1952). In *Taylor* this court held that "since the intent to steal was an essential element of the crime the appellant's failure to demur to the indictment did not constitute a waiver of his right to raise the question on his motion for a new trial and on appeal." *Taylor*, 214 Miss. at 268, 58 So.2d at 666 (citations omitted). However it should be noted that the sufficiency of the indictment was not even presented in the motion for a new trial.

¶19. This assignment of error is based more on punctuation and form rather than any substantive merit. The

indictment was inartfully drafted in pertinent part as follows:

> That STEVEN HARRISON, KEVIN WALTERS, late of the County aforesaid, did on or about the 01st day of January in the year of our Lord, 1996, in the County and State aforesaid, unlawfully, wilfully and feloniously break and enter Lowery Creek Church, located at Rt. 1 Seminary, *with the felonious and burglarious intent to take, steal and carry away the goods, or valuable things, for use, sale, deposit or transportation,* against the peace and dignity of the State of Mississippi."

Miss. Code Ann. § 97-17-33 (1994), the statute under which Harrison was charged, prohibits the breaking and entering, with intent to steal, of any building "in which any goods, merchandise, equipment or valuable thing shall be kept for use, sale, deposit or transportation."

¶20. Harrison's only cited authority is ***Brown v. State***, 209 Miss 636, 48 So.2d 131 (1950). In that case we reversed the trial court for sustaining a demurrer to the indictment. We quoted an earlier case which said:

> "Under this statute, the breaking and entering of a house of the character therein described with intent to steal therein is burglary only where goods, merchandise, or other valuable things are kept therein 'for use, sale, deposit or transportation.' Consequently, the purpose for which the goods, etc., are kept in the building is one of the elements of the offense created by the statute, and must be alleged in the indictment either in the words of the statute or their equivalent. . . ."

***Brown***, 209 Miss. at 640, 48 So.2d at 132 (*quoting* ***Cannon v. State***, 133 Miss. 567, 570, 98 So. 63, 64 (1923)). In this case we have a different situation. Although the indictment is inartfully drafted, unlike the ***Brown*** case, the words are contained in the indictment.

¶21. Furthermore the ***Brown*** case was decided before the adoption of Rule 7.06, Uniform Circuit and County Court Rules. This Court explained that "Whatever may have been the law in former days, our starting point today for consideration of a question such as this [whether the indictment was legally adequate for aggravated assault although it did not include the words "under circumstances manifesting extreme indifference to the value of human life"] is Rule 2.05, Uniform Criminal Rules of Circuit Court Practice [now Rule 7.06]." ***Harbin v. State***, 478 So.2d 796,798 (Miss. 1985). The indictment under which Harrison was charged contained each of the seven items required under Rule 7.06 of the Uniform Circuit and County Court Rules. Harrison has not shown that the misplacement of the words "for use, sale, deposit or transportation" prejudiced him in any way or that he was unaware of what crime he was charged with committing or that he was unable to prepare an adequate defense because of the indictment.

¶22. The State further argues that this Court has looked at a similar situation before in ***Henderson v. State***, 445 So.2d 1364 (Miss. 1984). In ***Henderson***, we considered an indictment and found that although inartfully worded, it did sufficiently charge the defendant with business burglary. ***Id.*** at 1368. The Court stated, "So long as from a fair reading of the indictment taken as a whole the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." ***Id.*** The State points out that the indictment under consideration in this case could be read two ways: that the goods or valuable things were kept for use, sale, deposit or transportation, or that Harrison stole them for one of these purposes. This is a fair reading of the indictment as it is written. We find that the indictment was legally sufficient in that Harrison was properly advised of what crime he was being accused and it did contain the necessary elements of the crime charged.

¶23. In conclusion, we find that the out-of-court statement testified to at trial by Shoemake was inadmissible hearsay. It was offered in evidence to prove the truth of the matter asserted, that something was missing from the church after the break-in. However, on the record as whole we are convinced this error was harmless and Harrison received a fair trial.

¶24. The evidence was sufficient to support the verdict. In addition, the indictment was legally sufficient, although inartfully drafted. It did meet all the necessary requirements and gave Harrison sufficient knowledge of what crime he was being accused of in order to enable him to prepare an adequate defense.

¶25. **CONVICTION OF BURGLARY AND SENTENCE OF FIVE (5) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. BANKS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**BANKS, JUSTICE, DISSENTING:**

¶26. Because the only evidence that anything was taken from the church, Officer Shoemake's testimony regarding the missing cassette player, was predicated on hearsay, not personal knowledge, I dissent.

¶27. Shoemake testified that he was advised by the church members that something was missing out of the church auditorium. The majority opinion recognizes that the out of court statements of the church members were inadmissible hearsay. The opinion fails, however, to note that Shoemake has no way of testifying that a cassette player was missing without personal knowledge that a cassette player had been there in the first place, except by relying on the out of court statements made by the church members.

¶28. Miss. R. Evid. 602 provides that a witness may not testify as to a matter without evidence being introduced which is sufficient to lay a foundation that the witness has personal knowledge of the matter. The opinion states that "[h]e could have testified to what he determined to be missing based on his first hand knowledge." However, there is no evidence in the record that Shoemake in fact had such first hand knowledge. The prosecution did not show that Shoemake had personal knowledge that a cassette player had been in the church auditorium. The defendant's objection on the grounds that the prosecution be required to lay a predicate was overruled. Nothing in the record suggests that Shoemake had any personal knowledge that an item was missing from the church.

¶29. It follows that the majority opinion is flawed to the extent that it relies on Shoemake's discovery that the cassette player was taken from the church auditorium as evidence of Harrison's intent to steal. The opinion combines Shoemake's hearsay with the testimony of another witness, that stereo equipment was in the back of Harrison's car, to arrive at Harrison's intent to steal. Moreover, there was no evidence that the stereo equipment found in Harrison's car had belonged to the church or had been taken from the church.

¶30. The prosecution did not carry its burden to prove that Harrison had an intent to steal when he entered the church. For the foregoing reasons I would reverse the lower court's decision.