## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-01124-SCT

*BOBBY TYRSE CLEMONS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/08/97 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NESHOBA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMUND J. PHILLIPS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | J. KENNEDY TURNER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/14/99 |
| MOTION FOR REHEARING FILED: | 2/11/99 |
| MANDATE ISSUED: | 4/22/99 |

**BEFORE SULLIVAN, P.J., BANKS AND ROBERTS, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

### STATEMENT OF THE CASE

¶1. On November 8, 1996, the Grand Jury of Neshoba County, Mississippi, indicted Bobby Tyrse Clemons (hereinafter "Bobby") for three (3) crimes of murder pursuant to Miss. Code Ann. § 97-3-19(1) (a). After presentation of preliminary discovery and preliminary motions from the defense and prosecution, the Clemons trial commenced with a jury on July 7, 1997, with the Honorable Marcus Gordon presiding. The trial concluded the following day with three (3) guilty verdicts of murder returned. The lower court sentenced Bobby to serve consecutive sentences of life on Counts I and II, and to serve a sentence of life on Count III, to run concurrent with the sentences of Counts I and II. Bobby timely filed his Motion for a New Trial which was denied by the trial court. It is from the foregoing events that Bobby brings this timely appeal asserting the following issues:

**I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DEFENSE COUNSEL'S HEARSAY OBJECTION TO THE**

**TESTIMONY OF SHERIFF McKEE THAT HE HEARD CLEMONS OR HIS BROTHER, KENNY, HAD A FIREARM SIMILAR TO THE MURDER WEAPON?**

**II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DEFENSE COUNSEL'S OBJECTIONS TO THE DISTRICT ATTORNEY LEADING WITNESS SUDBERRY BY READING PORTIONS OF SUDBERRY'S STATEMENT AND ASKING IF THEY WERE TRUE?**

**III. WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY THAT SUDBERRY HAD AGREED TO PLEAD GUILTY TO ACCESSORY AFTER THE FACT TO THE CRIME FOR WHICH CLEMONS WAS CHARGED?**

## STATEMENT OF THE FACTS

¶2. At trial, Danny Junior Davis testified that on July 15, 1996, Kenny Clemons came to see him at his home in Preston, Mississippi. Kenny was the younger brother of Bobby Clemons. While he was at the home of Davis, Kenny proceeded to borrow a nine-millimeter pistol from Davis. After the alleged incident, Sheriff Mike McKee of the Kemper County Sheriff's Department went to visit Davis to question him about the gun. It was at this time that Davis told the Sheriff that Kenny had borrowed the gun the day before. Sheriff McKee's testimony at trial corroborated this fact.

¶3. Timothy Sudberry testified next for the State. (Sudberry is the nephew of Davis). He stated that Bobby and Kenny were at the Preston Store on the day of the incident. Sudberry explained that Bobby told him that Cecil and Frankie Amos had some money and for that reason Bobby was trying to sell some speakers to them. He further testified that later on that day at the Preston Store, Kenny showed him the nine-millimeter borrowed from Davis. Sudberry stated that he had a twenty-five caliber (.25) pistol in his possession. All three boys went behind the Preston Store, where Bobby and Sudberry fired their pistols.

¶4. Sudberry stated that Bobby asked Kenny and Sudberry if their consciences would bother them if they were to shoot someone. Kenny responded that it would not bother him to shoot someone. Sudberry told Kenny he did not know how it would feel because he had not shot anyone before. Bobby then told Kenny that he wanted him to kill the Choctaws, meaning Cecil and Frankie. Sudberry told Kenny that he would not participate and placed his gun in the middle of the front seat of the car. The three boys then drove to Cheatham's Store.

¶5. Sudberry claimed that it was at this time that they saw Cecil Amos, Frankie Amos and Shirley Davis at the Cheatham Store. He stated that when the car with Cecil, Frankie and Shirley drove off, they followed the car. They soon pulled up beside the car and asked what they were going to do. Cecil, Frankie and Shirley responded that they were going to the Mound to drink beer. Bobby responded that they would meet them there.

¶6. Sudberry testified that he, Bobby and Kenny drove to the Nanihwaiya Cave. Sudberry also stated that Bobby told Kenny he wanted to use the big gun and took the nine-millimeter. Kenny took the twenty-five. Soon afterwards, the Amoses and Shirley arrived. They gave Bobby some beer and played some music tapes. Kenny asked Cecil to bring a tape to his car. Sudberry noted that Bobby told Kenny that after Cecil brought the tape and returned to his car, to follow him back to the car and shoot him.

¶7. Sudberry then testified that Bobby and Kenny walked up to the car in which Cecil, Frankie and Shirley

were sitting and raised their pistols. It was at this time, Sudberry stated, that he lay down in the seat of the car. He heard six or seven shots being fired. Sudberry claimed that he heard Kenny say that one of them was still moving and then heard another shot. The three young men left the caves immediately after the shooting.

¶8. Sudberry further testifed that after the incident, Kenny gave the .25 caliber pistol back to Sudberry. Sudberry hid the pistol in a hole on the side of the road on the day Kenny was arrested.

¶9. Serena Chapman testified that she found Cecil, Frankie and Shirley in Cecil and Frankie's mother's car at 7:00 a.m. the following morning in the Nanihwaiya Cave area. She stated that she saw blood and immediately went to Cheatham's Store to call an ambulance.

¶10. Tommy Thornton, a criminal investigator with the Neshoba County Sheriff's Department, was called to testify about the investigation of the murders of Cecil, Frankie and Shirley. He stated that of the shell casings found at the scene of the crime, two were fired from a .25 caliber pistol and the rest from a nine-millimeter.

¶11. Dr. Steven Timothy Hayne, a forensic pathologist, was also called as an expert witness by the State. His testimony specifically concerned the gunshot wounds suffered by the three victims, both lethal and non-lethal.

¶12. The State also called Steve Byrd as a witness. Mr. Byrd noted that he was employed as a forensic scientist, specializing in firearms evidence examinations, by the Mississippi Crime Laboratory in Jackson. He examined the firearms involved in the incident and determined that there was a positive relationship between the two firearms and the projectiles and cartridge cases that were found at the scene of the crime. He further stated that it was evident that projectiles found were fired in the particular firearms used to commit the murders. After Byrd's testimony, the State rested its case.

¶13. The defense first called John Gale to testify that he was using the outside phone, on and off, at the Preston Store on the day of the incident. He stated that he saw Kenneth and Sudberry shooting guns behind the store during the afternoon of the incident. He further noted that he saw Bobby, Kenny and Sudberry head in the direction of the Nanihwaiya Caves around 8:30 p.m. that evening. He also confirmed that he spoke with Daniel Junior Davis at the Preston Store around 9:00 p.m. Daniel and his girlfriend, Crystal, were apparently looking for the three young men to retrieve his gun. He later saw Davis pass back by the Preston Store around 9:30 p.m. and Bobby, Kenny and Sudberry passed by the Preston Store around 9:40 p.m. They returned to the Preston Store around 9:45 p.m. Gale then joined the three young men, along with Andrew Hickman, and all five traveled to DeKalb around 10:00 or 10:15 p.m. and later returned home around 12:00 a.m.

¶14. The defense then called Bobby as a witness. Bobby testified that he and his brother, Kenny, went to Cheatham's Store to get their father some cigarettes and a soda. He stated that Sudberry asked that he and Kenny wait at the store until he returned from going somewhere with his uncle, Davis. Bobby replied that he had to take the cigarettes and soda back home to his father. Bobby asserted that Sudberry left with Davis traveling toward the Nanihwaiya Caves. He also noted that Davis was in possession of the nine millimeter and Sudberry was in possession of the .25 caliber pistol. Bobby then testified that he arrived home around 9:00 p.m. and visited with his family for fifteen to twenty minutes, at which time he returned to Cheatham's Store. He stated that Sudberry was waiting for them at the store, but that Davis was not present. He also confirmed Gale's testimony that the five boys then went to DeKalb between 10:00 and 10:15 p.m. and

returned to Preston around 12:00 a.m. In cross-examination, Bobby admitted that he was at the Preston Store around 2:00 p.m. He also admitted that he saw and spoke with Cecil Amos, Frankie Amos, and Shirley Davis.

¶15. The defense then called Bobby's father, Kenneth Clemons, and his sister, Sherry Lynn Clemons, and Bobby's mother, Sherry Clemons. They all testified that they had seen Bobby during the evening in question around 8:30 p.m. His sister further stated that she saw Bobby a second time a little before 10:00 p.m. After this testimony, the defense rested its case.

¶16. The State recalled Sudberry for its rebuttal testimony. Sudberry's testimony simply confirmed his earlier testimony. The State then rested in rebuttal.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DEFENSE COUNSEL'S HEARSAY OBJECTION TO THE TESTIMONY OF SHERIFF McKEE THAT HE HEARD CLEMONS OR HIS BROTHER, KENNY, HAD A FIREARM SIMILAR TO THE MURDER WEAPON?

¶17. Clemons argues that impermissible hearsay was allowed and the evidence was prejudicial in that it was proof of possession of the murder weapon by Clemons' and his brother which supported the State's theory that they had borrowed the pistol from Davis. The contested testimony while Kemper County Sheriff McKee was on the witness stand is as follows:

Q. (Turner) Before you had gone to Mr. Davis's house, had you already heard that Kenny or Bobby one had had such a gun on their person?

BY MR. BROOKS: Your Honor, we are going to object. That would be hearsay.

BY THE COURT: It would be an exception to the hearsay rule, I think. Overruled. Without saying what you heard.

A. Yes, sir.

Q. (Turner) You had already heard that?

A. Yes, sir.

Clemons contends that this statement was classic hearsay citing Mississippi Rule of Evidence 802. This rule provides, "Hearsay is not admissible except as provided by law."

¶18. In *Peterson v. State*, 671 So. 2d 647 (Miss.1996), this Court pronounced the standard of review for the admissibility of evidence as follows:

Under the Supreme Court's standard of review, the admissibility of evidence rests within the discretion of the trial court. However, this Court must also determine whether the trial court employed the proper legal standards in its fact findings governing evidence admissibility. If in fact the trial court has incorrectly perceived the applicable legal standard in its fact findings, the Court applies a

substantially broader standard of review. However, a denial of a substantial right of the defendant must have been affected by the court's evidentiary ruling. Furthermore, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs.

*Peterson*, 671 So. 2d at 655-56 (internal citations omitted).

¶19. Rule 801 provides the definition of hearsay as "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Miss. R. Evid. 801(c). The statement made by a third party to the Sheriff was an out-of-court statement by persons other than the witness, Sheriff McKee. Therefore, it must be determined whether or not the statement of the third party was offered for the truth of the matter asserted, namely that Clemons and his brother had possession of the pistol.

¶20. The State argues that the statement that was made was offered not for the truth of the statement, but to show why Sheriff McKee went to Davis's home to determine if he had the gun that was used in the murder. Consequently, it asserts that the statement was not hearsay. The State cites to *Gayten v. State*, 595 So. 2d 409 (Miss. 1992). In *Gayten*, this Court found that the testimony of a police officer as to what an undercover agent said via a wire tap was not hearsay. *Gayten*, 595 So. 2d at 415. This was because the statements were "clearly offered solely for the purpose of showing that they were said. Just as clearly, the fact that these statements were made indicates the nature of the transaction and, in fact, that there was a transaction. But, the statements are not assertions which are important because they are true." *Id.* at 414. In contrast, the statement by the third party in the present case was an assertion which if true would be important, for it tends to establish that Clemons and his brother did have possession of the pistol used in the murder.

¶21. However, the case of *Swindle v. State*, 502 So. 2d 652 (Miss. 1987), does lend support to the State's theory that the statement was not hearsay. In *Swindle*, the Court found that an officer's testimony as to the substance of his conversation with an informant was offered to show the reason for the officer's presence at the scene when it stated, "an informant's tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time. . . ." *Swindle*, 502 So. 2d at 657-58. It should also be noted that the Court found that the out-of-court declaration in *Swindle* "was not introduced for the purpose of proving the truth of the assertion . . . but to show why Marshall was at the tavern on the day in question. The truth of the statement by Crenshaw to Marshall was not in issue." *Id.* at 658 (quoting *McGowan v. State*, 375 So. 2d 987, 990 (Miss. 1979)).

¶22. This Court finds that whether Clemons and his brother were in possession of the murder weapon on the day of the incident was at issue in the case *sub judice*. Thus, the statement if true would be prejudicial to Clemons's defense. "This rule of non-hearsay imports an objective test. The question is not the actual subjective state of mind of the prosecuting attorney, much less of the declarant, but rather a matter of how a reasonable objective observer would under the circumstances be likely to perceive the statement." *Turner v. State*, 573 So. 2d 1335, 1338 (Miss. 1990). The statement testified to by Sheriff McKee that he had heard that Clemons and his brother were in possession of a pistol that may have been involved in the murders when heard by the jury would be perceived as a statement proving that Clemons did in fact have possession of the murder weapon, the truth of the matter asserted. There is no reason for Sheriff McKee to explain why he went to Davis's home. Davis had already testified that he lent the nine millimeter to Kenny,

Clemons's brother. The hearsay statement by an unidentified third party that Sheriff McKee testified to was hearsay and should have been excluded as evidence.

¶23. However, although this Court has determined that the out of court statement that was testified to by Sheriff McKee was introduced for the truth of the matter asserted and it should not have been admitted into evidence, we believe this error was harmless given the other evidence presented which proved Clemons and his brother had possession of the pistol. *Alford v. State*, 508 So. 2d 1039, 1042 (Miss. 1987). Davis had already testified before the jury that he had lent his nine millimeter to Kenny Clemons when Sheriff McKee gave the complained of testimony. Sheriff McKee's comment did not give the jury any additional facts or stronger reason to believe that Clemons had the pistol than the jury already had been presented. Thus, although it might have been error to admit the out of court statement, the error was harmless in light of the other direct evidence presented at trial. There is no merit to this assignment of error.

### II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN OVERRULING DEFENSE COUNSEL'S OBJECTIONS TO THE DISTRICT ATTORNEY LEADING WITNESS SUDBERRY BY READING PORTIONS OF SUDBERRY'S STATEMENT AND ASKING IF THEY WERE TRUE?

¶24. Clemons next contends that when Sudberry was on the stand the trial court improperly overruled his objection to a leading question asked by the prosecutor during re-direct. He maintains that through leading questions the prosecutor elicited testimony regarding the statement Sudberry gave the police concerning his account of what happened during the murders. Clemons argues that these questions bolstered Sudberry's direct testimony. He maintains that his conviction should be reversed on this basis.

¶25. This Court stated the rule to be applied when reviewing a trial court's decisions regarding leading questions in *Whitlock v. State*, 419 So. 2d 200, 203 (Miss.1982):

> A leading question is one that suggests to the witness the specific answer desired by the examining attorney. Trial courts are given great discretion in permitting the use of such questions, and unless there has been a manifest abuse of discretion resulting in injury to the complaining party, we will not reverse the decision. This is because the harm caused is usually inconsiderable and speculative, and only the trial court was able to observe the demeanor of the witness to determine the harm.

*Whitlock*, 419 So. 2d at 203. (citations omitted). See also *Ballenger v. State*, 667 So. 2d 1242, 1258 (Miss. 1995); *Palmer v. State*, 427 So. 2d 111, 115 (Miss.1983); *Thomas v. State*, 217 So. 2d 287, 288 (Miss.1968); *Summerville v. State*, 207 Miss. 54, 64-65, 41 So. 2d 377, 379 (1949). When the defense attorney questioned Sudberry concerning his specific statements given to the police, he implied that Sudberry's story testified to in direct was not the same as given to the police. Considering the examination of Sudberry in its entirety, the leading questions were used only to corroborate Sudberry's direct testimony, to develop his testimony as to the entire statement given to the police and to rebut the implication that his direct testimony was untruthful.

¶26. If these were leading questions, the trial judge did not manifestly abuse his discretion since any harm was "inconsiderable and speculative." *Whitlock*, 419 So. 2d at 203. In light of the questions presented in cross-examination, these leading questions which were asked to give the full account of the statement given to the police were by no means excessive. The trial court did not abuse its discretion in allowing the State to use leading questions. This assignment is without merit.

### III. WHETHER THE TRIAL COURT ERRED IN ALLOWING TESTIMONY THAT SUDBERRY HAD AGREED TO PLEAD GUILTY TO ACCESSORY AFTER THE FACT TO THE CRIME FOR WHICH CLEMONS WAS CHARGED?

¶27. Clemons argues that he was denied a fair trial because the State introduced evidence that Sudberry had agreed to plead guilty to being an accessory after the fact. The direct examination of Sudberry included the following:

Q. And, because of that, you have been indicted as being an accessory after the fact of murder; is that correct?

A. Yes, sir.

Q. And, you have agreed to plead guilty to be sentenced - -

A. Yes, sir.

Q. - - to that charge?

A. Yes, sir.

Q. Is that correct?

A. Yes, sir.

¶28. This case is extremely similar to ***Robinson v. State***, 465 So. 2d 1065 (Miss. 1985). In ***Robinson***, the Court held that the admission of evidence of a coindictee's guilty plea was not reversible error where no objection was made to either questions or answers in which the evidence was elicited, admission of the testimony was not assigned as error in defendant's motion for new trial, and defense counsel cross-examined the coindictee regarding his guilty plea. ***Robinson***, 465 So. 2d at 1068-69. Based upon this Court's opinion in ***Robinson***, we conclude that the admission of Sudberry's testimony under the circumstances of the case *sub judice* do not constitute reversible error. However, we will also discuss the merits of this assignment of error.

¶29. Clemons relies upon ***Johns v. State***, 592 So. 2d 86 (Miss. 1991). In ***Johns***, the witness had been tried by a jury and found guilty of the same crime for which the defendant was being tried. The danger at issue in that case is that one jury would rely upon the judgment of a prior jury in reaching its decision. The present case is distinguishable, however, because the case *sub judice* deals with a plea of guilty; that is, a prior admission of guilt, which is consistent with the testimony at trial. This is a significant distinction because prior statements have evidentiary value different from prior findings of other tribunals.

¶30. Moreover, whether an error in admitting this evidence is sufficiently prejudicial to warrant reversal may be resolved differently where the offending evidence is no more than a repetition of what is said by the witness before a jury and subject to cross examination, as opposed to evidence of the collective judgment of another jury. Thus, it must be determined whether the admission of the testimony in question was error. It is essentially an evidentiary issue.

"Federal and state appellate courts have found the admission of a co-conspirator's plea of guilty, while

incompetent as substantive evidence of the defendant's guilt, may be admissible for other purposes. ***United States v. Medley***, 913 F.2d 1248, 1257-58 (7th Cir.1990); ***United States v. Davis***, 766 F.2d 1452, 1456 (10th Cir. 1985); ***United States v. Wiesle***, 542 F.2d 61, 62-63 (8th Cir.1976); ***State v. Padgett***, 410 N.W.2d 143, 146 (N.D.1987); ***People v. Brunner***, 797 P.2d 788, 789 (Colo.Ct.App.1990); see also ***State v. Braxter***, 568 A.2d 311, 316 (R.I.1990) (guilty plea of accomplice in trial of defendant on same charge admissible when introduced to impeach accomplice, but inadmissible to demonstrate guilt of defendant); ***State v. Rothwell***, 308 N.C. 782, 303 S.E.2d 798, 800-01 (1983) (guilty plea of co-conspirator admissible when admitted for "legitimate purpose" but never as evidence of defendant's guilt); ***Greer v. State***, 188 Ga. App. 808, 374 S.E.2d 337, 338 (1988) (no error for admission of accomplice's guilty plea to same crime which defendant is charged where the plea was introduced during the accomplice's testimony and the accomplice was subject to cross-examination by defendant)."

***White v. State***, 616 So. 2d 304, 307 (Miss. 1993).

¶31. When Sudberry testified he had made an agreement with the State to plead guilty to accessory after the fact, he gave evidence of a prior consistent statement. Miss. R. Evid. 801(d)(1) would control here:

> (d) Statements Which Are Not Hearsay. A statement is not hearsay if:

> (1) Prior Statement by Witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him[.]

Because Sudberry's admission that he pled guilty is a statement consistent with his testimony, it would have to fit under the hearsay exception at Subsection (d)(1)(B) for it to be admissible.

¶32. This Court confronted the issue of admissibility of prior consistent statements in the case of ***White v. State***, 616 So. 2d 304 (Miss.1993). The Court stated that the "admission of a prior consistent statement of a witness where the veracity of the witness has been attacked is proper but 'should be received by the court with great caution and only for the purpose of rebuttal so as to enable the jury to make a correct appraisal of the credibility of the witness.' " ***White***, 616 So. 2d at 308 (*quoting **Stampley v. State***, 284 So. 2d 305, 307 (Miss.1973)). Here the State acted too quickly. Sudberry's agreement of a guilty plea was elicited prior to any attack on his credibility. Under Mississippi precedents, then, the testimony should have been excluded. The question arises, then, whether this error is sufficient to require reversal. This Court does not believe so.

¶33. It was clear from the beginning that Sudberry's credibility was central to this case. His credibility was vigorously attacked on cross-examination. Prior inconsistent statements from Sudberry were elicited, admitted and explained. Moreover, on cross-examination Sudberry was questioned extensively about the nature of any sentencing arrangement he was receiving from the State. It is hard to believe that, but for the introduction of the guilty plea, this attack on Sudberry would not have been made. He was the primary witness against Clemons. Finally, without his testimony about any previous guilty plea, Sudberry made a detailed, in-court confession of his guilt. He clearly established the fact that he was guilty of the crime of

accessory after the fact. Sudberry admitted that he was present in the car at the time of the incident, and after the murders it was he that hid the murder weapon. Moreover, he was subjected to a searching cross-examination by defense counsel. When Sudberry went one step further on direct examination and testified that he had previously pleaded guilty to the same crime, he added nothing to his otherwise competent testimony. Under these circumstances, the premature references and testimony cannot be deemed error sufficient to warrant reversal.

¶34. This Court did find reversible error in *Johns* where evidence that the witness/accomplice had been convicted was introduced, notwithstanding the fact that the conviction was based on facts not involving the defendant and the fact that the witness was attacked on cross examination regarding the nature of the arrangement between her and the State. *Johns*, 592 So.2d at 90-92. However, whatever harm that was found by the majority based on the facts in *Johns*, this Court does not perceive a similar harm in the case *sub judice*. *White*, 616 So. 2d at 309. There is no merit to this assignment of error.

¶35. Clemons further argues that defense counsel rendered ineffective assistance by failing to object to the testimony. The standard of review for ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 669 (1984). "The test to be applied is (1) whether counsel's overall performance was deficient and (2) whether or not the deficient performance, if any, prejudiced the defense." *Taylor v. State*, 682 So. 2d 359, 363 (Miss. 1996). The defendant has the burden of proving both prongs. *Taylor*, 682 So. 2d at 363. " The adequacy of counsel's performance, as to its deficiency and prejudicial effect, should be measured by a 'totality of the circumstances.'" *Id.* However, there is a strong, yet rebuttable, presumption that the actions by the defense counsel were reasonable and strategic. *Cole v. State*, 666 So. 2d 767, 775 (Miss. 1995). "In short, defense counsel is presumed competent." *Foster v. State*, 687 So. 2d 1124, 1130 (Miss. 1996). *See also Johnson v. State*, 476 So. 2d 1195, 1204 (Miss. 1985). Finally, the defendant must show that there is a reasonable probability that but for the error of counsel, the jury's verdict would have been different. *Nicolaou v. State*, 612 So. 2d 1080, 1086 (Miss. 1992).

¶36. Clemons supports this contention with the holding of *Johns*, in which this Court held that failure to object to testimony that an alleged accomplice had been convicted of the same crime was ineffective assistance of counsel. *Johns*, 592 So. 2d at 91-92. The Court noted that the testimony concerning the accomplice's conviction was highly prejudicial and its admission was reversible error thus, the first prong under *Strickland* had been met. Further, the testimony would not have been admitted for consideration by the jury "but for" trial counsel's error. This resulted in a denial of a fair trial thereby meeting the second prong of the *Strickland* test. *Id.*

¶37. However, in the case sub judice the admission of Sudberry's guilty plea agreement was not found to be reversible error and thus, was not objectionable. However, even if it were determined that defense counsel's failure to object was deficient, this deficient performance did not prejudice Clemons. This Court does not believe that had defense counsel objected, there was a reasonable probability that the jury's verdict would have been different. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Cole v. State*, 666 So. 2d 767, 775 (Miss. 1995)(*quoting Cabello v. State*, 524 So. 2d 313, 315 (Miss. 1988)).

¶38. Before the State mentioned Sudberry's guilty plea agreement, Sudberry testified as to the facts surrounding the murders. Sudberry stated that he watched Clemons and his brother walk over to the Amoses vehicle, both carrying a gun. He saw both boys raise their guns towards the car. Sudberry then

testified that it was at this time that he ducked down in the backseat of the car. Immediately afterwards, Sudberry heard shots fired. Sudberry then stated that they left the park. It was at this time that Sudberry admitted that he kept his mouth shut about the murders and even buried the gun used by Kenny Clemons. All of this information was before the jury before it was aware that Sudberry was going to plead guilty to accessory after the fact. Furthermore, there was additional testimony before the jury linking the guns used in the murder to the Clemons brothers. Consequently, there was more than enough evidence in support of the jury's verdict. Therefore, the second prong of the Strickland test is not met. There is no showing of ineffective assistance of counsel.

## CONCLUSION

¶39. This Court finds that: (1) the trial court did not commit reversible error in admitting testimony of Sheriff McKee that he heard from a third party that Clemons and his brother had possession of the pistol used in the murders; (2) the trial court did not abuse its discretion in allowing the State to use leading questions in its re-direct of witness Sudberry; and (3) the admission of Sudberry's testimony that he had an agreement to plead guilty to accessory after the fact was not error sufficient to warrant reversal.

¶40. **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT II: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT II SHALL RUN CONSECUTIVELY WITH SENTENCE IN COUNT I. COUNT III: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE IN COUNT III SHALL RUN CONCURRENTLY WITH SENTENCE IN COUNTS I AND II. APPELLANT IS GIVEN CREDIT FOR JAIL TIME SERVED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**