502 So.2d 652 (1987)
William Paul SWINDLE & Steven Wayne Anderson
v.
STATE of Mississippi.
No. 56239.
Supreme Court of Mississippi.
February 4, 1987.
Rehearing Denied March 4, 1987.
John B. Farese, Farese, Farese & Farese, Ashland, Jimmy D. Shelton, Tupelo, and Ronald W. Lewis, Holcomb, Dunbar, Connell, Chaffin & Willard, Oxford, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Harold H. Brittain, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and PRATHER and ANDERSON, JJ.
ROY NOBLE LEE, Presiding Justice, for the Court:
William Paul Swindle and Steven Wayne Anderson were jointly indicted, tried and convicted in the Circuit Court of Lee County, Mississippi, on a charge of possessing *653 more than one (1) kilogram of marijuana with intent to distribute. Swindle was sentenced to twelve (12) years in the custody of the Mississippi Department of Corrections and was fined fifteen thousand dollars ($15,000). Anderson was sentenced to sixteen (16) years in the custody of the Mississippi Department of Corrections and was fined fifteen thousand dollars ($15,000). They have appealed the judgment of conviction and sentences to this Court and have assigned four (4) errors in the trial below.

I.

THE LOWER COURT COMMITTED REVERSIBLE ERROR BY DIRECTING SEQUESTRATION OF THE JURY LIST UNTIL THE DAY OF THE TRIAL, BY DENYING THE RIGHT OF THE DEFENSE TO INQUIRE INTO THE FACTUAL BASIS OF SUCH ORDER, AND BY FAILING TO GRANT A CONTINUANCE.
Appellants were indicted at the August 1983 Term of the Lee County Circuit Court and a trial was held upon the indictment, resulting in a mistrial when the jury was unable to agree upon a verdict. The case was tried a second time in April, 1984, and the trial judge sustained appellant's motion for a mistrial when narcotics agent Clay McDonald, a witness for the State, testified contrary to an order of the court entered on a motion in limine. During that trial, a juror reported to the court that one Andy Wilson had offered her two hundred dollars ($200.00) for the purpose of influencing her verdict in the case. Thereupon, the jury was sequestered until the motion for mistrial was sustained upon another ground. The case was set for retrial on June 11, 1984, and was tried June 12-13, 1984.
Prior to the June, 1984, trial, the lower court made known its intention to sequester and keep confidential the names of jurors and jury lists drawn for jury service beginning the week of June 11, 1984, and ordered the circuit clerk to summons the jurors by mail. The court held a hearing on the matter and the defense and prosecuting attorneys were given full opportunity to present their views, objections and arguments. The appellants strenuously objected to keeping the jury list confidential, apparently thinking that the prosecuting attorney and the sheriff's office would know the names of the jury lists. The court advised all attorneys that the order of confidentiality and sequestration provided that no person would have information as to the jurors summoned except the clerk and deputy who actually prepared the mail summonses. The jury list would not be made public until the jurors reported at 8:00 a.m. on the morning when court convened and the juror information sheets would be made available to the Bar after the juries were seated and impaneled. (This refers to juries impaneled for the week).
Appellants filed a motion for continuance because of the court sequestering the jury list. In denying the motion, the lower court set out the procedure in impaneling juries in the First Circuit Court District, which was strictly followed in the present case:
THE COURT: The motion for a continuance filed by the defendant, William Paul Swindle, will be denied. The Court takes note of the practice in this district as follows: The prospective jurors are assembled on Monday morning at eight-thirty; they are seated by the clerk of this Court, who at that time checks the list to be sure that they are present and obtains from them the juror information sheet. That sheet is, after having been collected by the clerk, is kept by her or some member of her staff until qualification of the entire panel has been completed by the Court.
When that has been done, it is then known who will actually remain and serve as jurors. They are seated in order, at a random order, as they are drawn from the jury box; and when the jury list has been prepared, the jury information slips are placed in the order in which the jurors are seated in the courtroom *654 and in the order in which the jury list appeared. And at that time, the information slip made available to Counsel. That has been the practice as long as I can remember, and it continued to be the practice. There is no deprivation to the defendant in this particular case, save and except that I ordered the jury list, that is, the entire 100-name list, to not be made public until eight o'clock this morning.
According to Counsel advises that as far as he knows it was available at eight. He didn't see it until nine, but that's not my doing. The motion for a continuance will be denied.
On the hearing for confidentiality of the jury list, an indictment charging Andy Wilson with jury tampering was introduced in evidence. The lower court refused to permit the appellants to call Andy Wilson to testify about the charge.
Although Valentine v. State, 396 So.2d 15 (Miss. 1981), was reversed on other grounds, the Court did discuss the question of sequestering the jury list as was done here. The Court said:
Another proposition argued is that under recently enacted Mississippi Code Annotated § 13-5-32 (Supp. 1980) the trial judge erroneously sequestered the jury list. The statute reads:
§ 13-5-32. Names of jurors drawn from jury box to be made public, exception.
The names of jurors drawn from the jury box shall be made available to the public unless the court determines in any instance that this information in the interest of justice should be kept confidential or its use limited in whole or in part.
Reversal of the case is being ordered for reasons discussed above having to do with cross-examination limitations. Nevertheless, the Court sets forth its opinion that only in rare and exceptional cases should a presiding judge sequester or keep secret the names of jurors drawn from the jury box. Here the trial judge ordered that names of the jurors drawn would be kept confidential by the clerk "until the said Juror's [sic] have reported to the Courthouse for Jury service." Before the trial judge makes a determination not to make a jury list available to litigants or trial attorneys whose clients will have a cause for trial, he should cause the record clearly to demonstrate good and sufficient reason "in the interest of justice" as § 13-5-32 provides. Before making his determination to keep confidential or secret the names of the jurors drawn from the jury box, the litigants or counsel (in this case the defendant) should have notice that such action is being considered by the trial judge. Then the court should make its decision only after a hearing is accorded the defendant on the issue.
396 So.2d at 17.
At the sequestration hearing in the case sub judice, the court found the following:
I have never ... felt that the sequestration of the jury list was appropriate or did anything to see that it was done. But when a prospective juror of this county is approached by someone who attempts to influence their decision or participation in the trial of a case that comes to my attention, then I think it is my responsibility to do whatever is reasonable in the exercise of my power as a judge to see that that does not happen again.
I am not finding the defendant in the indictment returned, Mr. Wilson  I'm not indulging in any speculation as to whether or not he is guilty at all, but I think that the returning of an indictment certainly places me in the position of I must give that some weight. I know no other way to be reasonably sure that that kind of thing does not happen again save and except to sequester the list. I know of no hardship that would befall the defendant or the State. The State's not going to have them; no one's going to have them except the clerk.
Now I do now find that the fact that on a prior occasion there was an attempt made to influence a juror. I believe that *655 constitutes a rare and exceptional circumstance and I so find. I likewise find that that constitutes good and sufficient reason... .
The lower court determined that a sensitive situation existed, when the present case came on for trial in June, 1984. It made no difference to the court on whose behalf the man Andy Wilson was tampering with the jury. The court's concern was to insure that a fair and untainted jury heard the case. Only the clerk knew the names on the jury list. No other persons knew the names of the potential jurors. Neither side had an advantage over the other. Under the circumstances here, we are of the opinion that the lower court followed the statute and the guidelines set forth in Valentine v. State, supra. Appellants' counsel were given unlimited time in voir dire of the jury. All parties apparently were satisfied with the jury as selected.[1] We find no reversible error here.

II.

THE LOWER COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE TESTIMONY OF KEN VALENTINE ON REBUTTAL.
During the State's case-in-chief, narcotics agents Clay McDonald and Bill Benyo testified that on August 2, 1983, they saw appellant Swindle's pickup truck in Tupelo. After receiving a tip from their confidential informer, they observed a marijuana "drop" from that vehicle in a rural area outside the city. Both agents testified that they recognized Swindle's truck in Tupelo and later in the rural area. Agent McDonald recognized appellant Swindle as the driver of the truck in the vicinity of the drop. He was unable to identify the passenger in the vehicle. Agent Benyo testified that he saw appellant Anderson get out of the pickup truck and deposit a plastic garbage bag near a tree, and that appellant Swindle was the driver of the pickup.
Appellants relied upon the defense of alibi. They testified that they left Tupelo around 11:30 a.m. en route to an automobile auction in Baldwyn, Mississippi, and that they were at the auction sale during the time Agents Benyo and McDonald claimed to have seen them drop the marijuana. In rebuttal, the State called Tupelo Police Officer Ken Valentine to the stand. Valentine testified that he saw Swindle with a person, whom he could not identify, driving a pickup truck on Longdale Street, i.e., the same street in Tupelo where Agents McDonald and Benyo claimed to have seen it on the same day. Valentine's testimony corroborated the testimony of the narcotics agents and rebutted the appellant's alibi defense.
The appellants specifically objected to Officer Valentine's testimony under Rule 4.07, Uniform Criminal Rules of Circuit Court Practice, which provides that, upon written demand of the prosecuting attorney, a defendant shall serve upon the State a written notice of his intention to offer the defense of alibi and state the specific place where the defendant claims to have been at the time of the alleged offense, together with the names and addresses of the witnesses upon whom he intends to rely for the alibi. Within ten (10) days thereafter, the prosecuting attorney is required to serve upon the defendant or his attorney written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and to rebut testimony of the defendant's alibi witnesses.
In the present case, the prosecuting attorney did not make written demand upon appellants' attorneys as to whether the alibi defense would be used. The State very well may have anticipated using the witness Valentine for some purpose other than that of rebutting an alibi.[2]
*656 In discussing the effect of Rule 4.07, this Court said in Shavers v. State, 455 So.2d 1299, 1302 (Miss. 1984):
In Moore v. State, 405 So.2d 97 (Miss. 1981) this Court held that, where discovery is invoked under Rule 4.07, failure to reveal the names of the state's rebuttal witnesses precludes their testimony from being allowed in evidence. Id. at 101.
Unlike Rule 4.06, where defense counsel must initiate discovery, Rule 4.07 applies only where the prosecutor requests a notice of alibi. Rule 4.07 was neither invoked at trial nor asserted as a ground for appeal in this case. There is no merit to appellant's first assignment of error.
We are of the opinion that the lower court did not err in admitting the testimony of Officer Valentine as a rebuttal witness.

III.

THE PROSECUTOR'S PREJUDICIAL COMMENT IN CLOSING ARGUMENT, TAKEN TOGETHER WITH OTHER ASSIGNED ERRORS, REQUIRES REVERSAL.
The prosecuting attorney made the following comments in closing argument:
(1) They're [narcotics agents] trying to keep us protected from these dopers, these distributors of dope, who sell that quantity merchandise, make big money, drive Lincoln Continental cars. and
(2) They could make a lot of money on selling it to little kids, people who are trying to learn how to do dope.
The appellants made no objection to the above comments by the prosecuting attorney. The appellants are now procedurally barred from raising an objection to those remarks for the first time on appeal. Cummings v. State, 465 So.2d 993 (Miss. 1985). The prosecuting attorney repeated the second statement later during his argument and an objection was made and sustained by the court. Without conceding that the statement was prejudicial, the trial court, after sustaining the objection, admonished the jury to disregard the statement. In Holifield v. State, 275 So.2d 851 (Miss. 1973), the Court held that:
When the court sustains objections to improper testimony of witnesses or improper remarks of legal counsel participating in a trial, it is presumed, unless otherwise shown, that the jury followed the directions of the trial judge to disregard such comment or testimony. Hughes v. State, 179 Miss. 61, 174 So. 557 (1937); Dabbs v. Richardson, 137 Miss. 789, 102 So. 769 (1925).
275 So.2d at 856. Also, see Fairley v. State, 467 So.2d 894, 900 (Miss. 1985).
An additional comment by the prosecutor follows:
(3) And only you, ladies and gentlemen, can make the decision that we're not going to submit to dope distribution in our county.
Appellants objected to the above remark and the court sustained the objection, but denied a motion for mistrial. The appellants rely upon Fulgham v. State, 386 So.2d 1099 (Miss. 1980), in support of their argument that the comment constituted reversible error.
We are of the opinion that Fulgham v. State is distinguished from the present case and comment of the prosecuting attorney. In Fulgham, the argument linked the jury with the criminal justice system as a chain, involving law enforcement and grand jury, and referred to the petit jury as a part of law enforcement. The remark of the prosecuting attorney here did not constitute the jury as a link in a chain of law enforcement. Further, the lower court sustained the objection, although it was not asked to instruct the jury to disregard the remarks. Instances where statements of the prosecuting attorney along similar lines have been held not to be error follow:

*657 "You know, we have got to let people know what the people of Harrison County stand for." Carleton v. State, 425 So.2d 1036, 1039 (Miss. 1983).
"This is your community. You live in it. You set the standards. And today you can set a standard that you can live by." Wilson v. State, 344 So.2d 739, 741 (Miss. 1977).
We reject Assignment III.

IV.

THE LOWER COURT ERRED IN PERMITTING THE STATE'S WITNESSES TO TESTIFY ABOUT INFORMATION RECEIVED FROM AN INFORMANT AFTER SUSTAINING DEFENDANT'S MOTION IN LIMINE AND ERRED IN DENYING THE DEFENSE THE RIGHT TO CROSS-EXAMINE REGARDING THE IDENTITY OF ANOTHER POSSIBLE SUSPECT.

A. Testimony about Information Received from Informant.

Appellant Swindle filed a motion in limine requesting that the prosecution be prohibited from asking questions of witnesses about conversations they may have had with confidential informants relating to the following subjects: (a) that defendant Swindle had in the past been involved in the sale of narcotics or used narcotics; (b) that defendant Swindle had used this locality as a "drop" place in the past; (c) that defendant Swindle would be operating a certain vehicle in the Plantersville area on the date in question.
The same motion was sustained at the previous trial, and the court reaffirmed its earlier ruling without argument. In his opening remarks, the prosecutor stated the following:
They [the agents] tried to locate them [the defendants] later in the day; were unable to. But an informant told them if you go to a certain location on the Planters-Richmond road, you're liable to see something very interesting. And they went and they staked out this area... .
There was no objection to this statement or a later reference to the tip. Thus, the contemporaneous objection rule applies again.
On direct examination, Agent McDonald testified:
Q. Now after you lost sight of the Toyota somewhere between Cleveland and somewhere else and were unable to follow it, after you had left Cardinal Drive, what did you after you lost the vehicle?
A. We traveled to other locations that we had previously seen Mr. Swindle in attempts to regain surveillance of him. We were unsuccessful at this, and during this period of time, I contacted a source of information and inquired Mr. Swindle's whereabouts. The source of information told me that it was possible that he would be headed toward the Plantersville, Mississippi, area 
The defense objected on grounds of hearsay and attack on reputation and character in violation of the right under the Sixth Amendment and Art. 3, § 26, Miss. Const. 1890, to confront one's accusers. The trial judge overruled the objection on the ground that the agent could give an explanation as to his presence at the scene. The court cautioned the State not to inquire about what had taken place at the scene in the past. The defense again objected to the statement, moved for a mistrial, and in the alternative, asked the court to instruct the jury to disregard the question and answer. The objection was overruled, and the prosecutor resumed with the following question:
Q. Now based on the information you received from your source, what did you do?
The conversation of an informant is generally inadmissible as hearsay where it is a part of the State's development of its proof on the merits in a criminal case, but not in other circumstances where probable cause for an arrest or search is at issue. Ratcliff v. State, 308 So.2d 225, 227-228 (Miss. 1975). See McVeay v. State, 355 So.2d 1389, 1391 (Miss. 1978). However, an informant's *658 tip is admissible to the extent required to show why an officer acted as he did and was at a particular place at a particular time:
In Lee v. State, 338 So.2d 395 (Miss. 1976), we stated:
To constitute hearsay, extra-judicial words must by some means present a statement, declaration, or assertion introduced for the purpose of proving the truth of the matter contained in or asserted by the item or thing. McCormick, Evidence, 2d Ed. § 246 (1972). (338 So.2d at 397).
In this case the out-of-court declaration by Crenshaw was not introduced for the purpose of proving the truth of the assertion by Crenshaw, but to show why Marshall was at the tavern on the day in question.
The truth of the statement by Crenshaw to Marshall was not in issue. Marshall acted on the information and was able to purchase marijuana as the result of the meeting arranged by Crenshaw. An officer engaged in undercover work is entitled to show the reason for being at a particular place at a particular time to explain the reason for his presence at a particular place at a specified time. We hold the conversation between Marshall and Crenshaw was competent to show the information on which Marshall acted.
McGowan v. State, 375 So.2d 987, 990 (Miss. 1979).
It is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into the details of it. Tolbert v. State, 407 So.2d 815 (Miss. 1981).

B. Denial of Cross-Examination Regarding Identity of the Confidential Informant.

The defense asked for the right to cross-examine on the matter of the informant. Later, on cross-examination, Agent McDonald denied stopping, interrogating and arresting someone that day on the Plantersville road, other than appellees. When pressed as to whether he stopped and interrogated anyone, the witness said, "Your Honor, that would help in an elimination process."
The trial judge conducted a confidential examination of the witness. Agent McDonald testified that the informer was observed by a third party talking to him (McDonald) that day on the road and that the informant had told appellant Swindle that he had been stopped by the police and searched and arrested. The informant did this in order to protect himself. The witness stated that he would have to say that he stopped but did not search and arrest someone on the road that day. The trial court held that the information would be sufficient for the appellants to identify the confidential informant, stating that although to some extent the appellant would be deprived of the right to cross-examine, the public interest in maintaining secrecy of the informant's identity should prevail. Objections to similar questioning were sustained again two other times.
The "informer's privilege" enables the prosecution to withhold the informer's identity. "In order for the trial court to require the identity of an informant be revealed, he must have been a participant in the crime or an eyewitness to the offense which would cause the confidential informant to become a material witness." Breckenridge v. State, 472 So.2d 373, 377 (Miss. 1985). There is no evidence that the informant here was a participant in, or an eyewitness to, the offense. Disclosure of such a witness is within the sound discretion of the trial court. Id.
If a reliable informant tells officers, "if you go to Point X you'll find evidence," the identity of the informant may be withheld.
Id. [quoting Daniels v. State, 422 So.2d 289 (Miss. 1982)]. See Garvis v. State, 483 So.2d 312, 316 (Miss. 1986). This Court has ruled the same where the informant was not a participant in the crime, but he personally saw drugs at a residence and related such information to the police, Read v. State, 430 So.2d 832, 836 (Miss. 1983), and *659 where the informant apparently advised the police officers that they could purchase marijuana from the defendant, Young v. State, 245 So.2d 26, 27 (Miss. 1971).
In both the instant case and Ward v. State, 293 So.2d 419, 421 (Miss. 1974), the appellant contended "that the failure to reveal the identity of the cooperating individual deprived him of the opportunity to determine the credibility of that individual and the constitutionally-guaranteed rights of confrontation and cross-examination of the witness against him." Id. The court said:
Since the State did not call the informer as a witness to testify against appellant, it is obvious that he was not deprived of his constitutional right to be confronted by a witness against him, and since the information furnished by the informer was not the basis for a search, it is immaterial whether such informer was a credible person.
Id.
The assignment is rejected.
We are of the opinion that the appellants received a fair trial and that there is no reversible error in the record. The judgment of the lower court is affirmed.
AFFIRMED.
WALKER, C.J., HAWKINS, P.J., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
NOTES
[1] (BY APPELLANT SWINDLE'S COUNSEL): Now, ladies and gentlemen, I have about five minutes. With your indulgence, I have two things to take [sic] up. I appreciate the fact that you've listened. I think if I were tried, I'd like for your [sic] 12 people to try me.
[2] If the appellants had intended to use the alibi defense on the third trial, they could have served notice upon the State that they so intended and then could have demanded to know the names and addresses of all witnesses to be used by the State in rebuttal of the alibi. That was not done.