# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-KA-01163-SCT

*STACI SMITH BROOME a/k/a STACI S. BROOM*
*a/k/a STACI BROOME*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/11/2023 |
| TRIAL JUDGE: | HON. STANLEY ALEX SOREY |
| TRIAL COURT ATTORNEYS: | THOMAS LEWIS TULLOS, II |
| | CHRISTOPHER RANDALL PURDUM |
| | CHRISTOPHER DOUGLAS HENNIS |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALLISON HORNE |
| DISTRICT ATTORNEY: | CHRISTOPHER DOUGLAS HENNIS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/06/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., CHAMBERLIN AND ISHEE, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.    Staci Broome was convicted of aggravated assault and sentenced to serve a term of twenty years. Broome now appeals her conviction and sentence. She argues that the trial court erred by allowing hearsay testimony as well as lay opinion testimony on the ultimate issue, resulting in prejudice to her defense and requiring reversal. After careful review, this Court affirms Broome's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. Broome and Michael Mathis were involved in a sexual relationship while Michael was still married to, but separated from, his wife. Michael had a daughter, Julie Mathis. Two incidents are relevant to understanding the relationship between Broome and Julie. About a week prior to the incident this case involves, Julie was speaking with her father when Broome's dog ran up and started barking. Julie told the dog to hush, and this upset Broome. Broome told Julie, "you can't tell my dog to hush." Julie also mentioned a second incident when she was going to stop at her father's house, but she saw Broome's car in the driveway and decided not to stop. Julie took a picture of Broome's car and sent it to her father to explain why she did not come inside. Julie stated that she did not "like going over there when [there were] other people around because [she did not] feel comfortable."

¶3. Julie was enrolled in the nursing program at Jones College. On March 3, 2023, Julie drove to her father's house to do schoolwork. When she arrived, she went into the office, which was a room off of the garage. Julie locked the door to the office and began doing her schoolwork. Michael had invited Broome and her daughter Amber over to the house because he was going to grill. Michael testified that Broome noticed Julie's car and asked him if Julie was at the house. Amber, on the other hand, testified that she was the one who told Broome that Julie was at the house. Amber stated that her mom did not say anything, but "[s]he just started taking out her earrings" and walking toward the office in the garage.

¶4. After working for about an hour, Julie heard screaming outside the office. Julie testified that Broome was at the door of the office cursing. Julie opened the door of the

office, and Broome continued screaming at her, shouting expletives and calling Julie names. Julie stated that Broome was screaming at her, "telling me that I can't tell her dog to hush and that I can't take pictures of a [car] tag that's in my dad's driveway . . . . And then, when I told her that she wasn't my mother and she can't tell me what to do, she lunged."

¶5.    Julie testified that Broome tried to punch her but flailed and lost her balance. Amber contrarily testified that Julie pushed Broome. Broome grabbed for Julie, and they both fell to the floor of the garage. Julie testified that while the two women were on the garage floor, they "were tussling. . . . just throwing punches at each other, just straight fistfight brawl." Michael heard the fight and came to break it apart. Once Michael broke the women apart, Julie went back into the office, locked the door, and called 911. Broome remained outside the office door in the garage.

¶6.    Once Julie was back in the locked office, Broome began to beat on the door with a hammer. Broome continued to yell at Julie. Julie opened the door, and Broome approached her with a "shiny metal object[.]" Amber testified that the object was a wrench. Broome repeatedly hit Julie in the head with the wrench. Julie stated that she blacked out from the first blow to the head and then woke up and began to fight Broome for the wrench. Amber testified that Broome hit Julie "in the face multiple times, and her tooth came out." Julie was eventually able to wrestle the wrench away from Broome, and she tossed it out of reach. Michael heard the commotion, and he returned to break up the fight. Michael noticed blood on Julie's face. Julie went back into the office and called 911 a second time. Shortly after this, officers arrived on the scene.

3

¶7. Investigator Brian Green with the Magee Police Department arrived to investigate the altercation. Green testified that Julie was in an ambulance when he arrived and that she told him Broome hit her in the head with a metal object. Green took pictures of the scene and located both a hammer and a quarter-inch ratchet in the garage. Green noticed that the ratchet had spots of red on it as well as some blonde hair. Green interviewed Michael and Julie. As a result of his investigation, Green charged Broome with aggravated assault.

¶8. Julie testified that her injuries included a crushed orbital socket, crushed sinus cavity, fractured cheek bone, split lip, lost tooth, and deviated septum. The jury was shown photos of Julie's face from the day of the incident and the days following. After deliberating, the jury found Broome guilty of aggravated assault, and she was sentenced to twenty years, with fifteen years to serve and five years of supervised probation. Broome appeals her conviction and sentence.

## ISSUES PRESENTED

¶9. Broome raises the following issues in her appeal:

I. Whether the trial court erred by allowing hearsay testimony.

II. Whether the trial court erred by allowing opinion testimony from a lay witness regarding the ultimate issue in the case.

## STANDARD OF REVIEW

¶10. This Court reviews the admission or suppression of testimony for an abuse of discretion. *Franklin v. State*, 136 So. 3d 1021, 1028 (Miss. 2014) (citing *Clemons v. State*, 732 So. 2d 883, 887 (Miss. 1999)). "Reversal is required only where abuse of that discretion can be shown to cause prejudice to the defendant." *Id.* (citing *Clemons*, 732 So. 2d at 888).

4

## DISCUSSION

### I.  Whether the trial court erred by allowing hearsay testimony.

¶11.  At trial, the State called Investigator Green. Green had investigated the altercation that took place between Broome and Julie on March 3, 2023. When Green arrived at the scene, he testified that Julie was in an ambulance. The State asked Green why Julie was in the ambulance, and Broome raised a hearsay objection. The trial court overruled this objection, finding that Green could "state what he learned through his investigation." Green then testified that "Julie Mathis stated she had been hit with a metal object by a Ms. Staci Broome." During Green's investigation, he located a quarter-inch ratchet, which he identified as the weapon that Broome used to hit Julie. Green again testified that it was Julie's statement to him that "she was hit in the head with a metal object" that led him to the ratchet. Broome made a hearsay objection to this testimony as well, and the court overruled the objection. Broome identifies this testimony offered by Detective Green in her appeal as inadmissible hearsay that requires reversal and a new trial. While the separate opinion attacks other alleged hearsay statements, this is the only one assigned as error on appeal.

¶12.  Green testified twice that Julie told him she had been in hit in the head with a metal object. Broome objected to this testimony in both instances, and the trial court overruled both objections. "Hearsay is an out-of-court statement offered in court by someone other than the declarant to prove the truth of the matter asserted." *Franklin*, 136 So. 3d at 1029 (citing Miss. R. Evid. 801(c)).[1] Hearsay is generally inadmissible. Miss. R. Evid. 802. The

---

[1] The language of Rule 801(c) has since changed. It now reads as follows: "'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial

5

objectionable statements by Green were out-of-court statements made by Julie, so the first prong of hearsay is met. The next inquiry is whether the statements were offered to prove the truth of the matter asserted. *Franklin*, 136 So. 3d at 1029 (citing Miss. R. Evid. 801(c)).

¶13.     The State argues that an exclusion exists for statements made by investigators to demonstrate the course of their investigation. *See Franklin*, 136 So. 3d at 1029. "Statements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." *McCollum v. State*, 372 So. 3d 980, 988 (Miss. 2023) (internal quotation marks omitted) (quoting *Eubanks v. State*, 291 So. 3d 309, 322-23 (Miss. 2020)). When a statement is offered to demonstrate the officer's next investigatory steps and not to prove the truth of the matter asserted, the statement is not hearsay. *Id.*

¶14.     In this case, Green's testimony about the metal object was clearly not hearsay because it was offered to demonstrate why he entered the garage, began to search for a metal object, and ultimately found a hammer and a ratchet. This is clearly supported by the testimony. Furthermore, the focus of the exclusion is not what Green testified but why the testimony was offered. *Eubanks*, 291 So. 3d at 322-23. We agree that it was improper to allow Green to repeat Julie's identification of Broome. This was clearly hearsay. Given that Julie and Amber both identified Broome as the attacker at trial and no evidence was offered to the contrary, however, this error is clearly harmless beyond a reasonable doubt.

¶15.     Green made clear that it was Julie's statement that led him to discover the ratchet.

---

or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Miss. R. Evid. 801(c).

6

This statement falls within the *Eubanks* hearsay exclusion. The trial court did not abuse its discretion by allowing Green to testify about what led him to discover the ratchet because it showed the steps he took during the course of his investigation and was not admitted simply to prove the truth of the matter asserted. While Green testified twice about the statement from Julie, the analysis remains the same for both instances. His testimony explained the steps he took and why he took them in the process of his investigation. To list the plethora of cases that hold in this manner would be to merely "paint the lily." Or, in keeping with the Shakespearean theme, the argument is "Much Ado About Nothing."

¶16.    Contrary to the assertion of the dissent, this long-standing principle does not allow investigators free rein to testify about anything that their investigation revealed. Rather, an investigator's testimony is simply not hearsay when it is offered to demonstrate the reason for the next investigatory step taken. The dissent seizes upon comments by the trial judge that the officer could "state what he learned through his investigation[,]" and "Overruled.  It's part of his initial investigation" to insinuate a finding that this opinion opens the door for hearsay testimony regarding anything found during the investigation. This is simply untrue. While the trial judge's wording may have been ill-phrased, we will not place form over clear substance. The trial judge clearly allowed Green's testimony because it did not constitute hearsay under *Eubanks*. More importantly, the record clearly supports the finding. Out of an abundance of caution, we reiterate that simply because testimony is derived from law enforcement's investigation does not exempt it from hearsay.

¶17.    The hearsay exception identified in *Eubanks* is not new, and the dissent is correct that

7

its basis is found in ***Swindle v. State***, 502 So. 2d 652, 658 (Miss. 1987). The Court in ***Swindle*** held that "[i]t is elemental that a police officer may show that he has received a complaint, and what he did about the complaint without going into the details of it." ***Id.*** (citing ***Tolbert v. State***, 407 So. 2d 815 (Miss. 1981)). A law enforcement officer as a witness is not limited in testimony to only what he or she did about a complaint. Instead, the testimony must conform to the Mississippi Rules of Evidence. In this case, Investigator Green's testimony did conform to the rules of evidence as it was offered to demonstrate the investigatory steps taken subsequent to the information he gleaned from Julie and not for the truth of the matter asserted.

¶18. It is also worthy to note that Broome suffered no prejudice. Julie, the victim, testified and was subjected to cross-examination. Julie identified Broome as the assailant. As set forth below, multiple other witnesses also testified about what happened in the fight, what led to the fight, and what weapon was used. Further, additional physical evidence was introduced including the metal ratchet.

¶19. The dissent engages in a thorough analysis of the witnesses' testimony in this case and concludes that Broome did suffer prejudice from the inclusion of Investigator Green's statements. Though Amber did give some contrary testimony to Julie, stating that it was Julie who first pushed Broome, Amber unequivocally stated that it was Broome who beat Julie with a metal wrench. Amber initially told law enforcement that Julie was the aggressor. At trial, however, Amber testified that Broome beat Julie with a metal wrench. When asked why her testimony differed, Amber stated, "[b]ecause I can't always fight her battles for her." She

8

then testified about a text message she sent Julie after the altercation, apologizing to Julie and telling her that she would tell the truth if asked to testify and that what her mother did to Julie was wrong.

¶20. Michael testified that after he broke up the first altercation between Broome and Julie, Julie went back into the office and "[i]t wasn't just a few minutes, and I mean, and [Broome]'s back, you know, cussing and stuff and just trying to get Julie out." Michael testified that Broome was telling Julie "she was going to . . . whip her ass . . . . And then, . . . [Broome] reached down and there was a hammer there and then she started, you know, hitting, welding on the door." Michael said he took the hammer from Broome and he thought things had calmed down, so he went back to grilling. He soon heard another commotion and returned to find Broome and Julie fighting again, and he pulled them apart a second time. This time, he noticed "blood on Julie's face," but he did not know whose blood it was at the time.

¶21. Given the ample evidence that Broome attacked Julie with a metal tool, there is no need to overrule the jury's verdict in this case. This issue is without merit.

### II. Whether the trial court erred by allowing opinion testimony from a lay witness regarding the ultimate issue in the case.

¶22. Investigator Green was also asked to express his opinion on what had transpired. On direct examination, the State asked Green: "based upon speaking with all the witnesses, collecting the evidence, in your experience as an investigator, what did you . . . ascertain happened that night at the house?" Green responded that he "believe[d] that Ms. Staci Broome assaulted Ms. Julie Mathis with that ratchet." Broome objected based on Green's

9

lack of personal knowledge, since he was not present when the altercation took place. The trial court overruled Broome's objection, finding that Green could "testify about his investigation and what he learned through that investigation."

¶23. Detailed analysis of this issue is unwarranted, given the testimony laid out above, as any alleged error would clearly be harmless given the ample credible evidence of aggravated assault presented by the State. "We do not reverse a conviction for an erroneous evidentiary ruling unless 'the error adversely affects a substantial right of a party,' or in other words, unless the ruling prejudiced the accused." *Smith v. State*, 136 So. 3d 424, 435 (Miss. 2014) (quoting *Young v. State*, 99 So. 3d 159, 165 (Miss. 2012)). Julie, Amber and Michael all testified about the fight that occurred between Julie and Broome. Julie and Amber also testified that Broome used a metal object or a metal wrench to hit Julie. The metal ratchet was introduced into evidence. Green testified that he noticed "blonde hair and spots of red" on the ratchet when he collected it. Green testified that Julie's hair was blonde. The State introduced photos of Julie from the day of the incident and the weeks following depicting the injuries to her face. Any alleged error resulting from Green's testimony regarding the "ultimate issue" was harmless given the substantial evidence presented by the State.

## CONCLUSION

¶24. Broome has failed to present this Court with error that resulted in prejudice and requires reversal. Therefore, Broome's conviction and sentence are affirmed.

¶25. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., MAXWELL, ISHEE AND BRANNING, JJ., CONCUR. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN**

10

**PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, J.**

**GRIFFIS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶26.    A trial should be based on evidence that is properly admissible under the Mississippi Rules of Evidence.

### I.    *Whether the trial court erred by allowing hearsay testimony.*

#### A.    *Investigator Brian Green's hearsay testimony*.

¶27.    The first witness was Investigator Brian Green. The following are relevant parts of Investigator Green's direct examination:

Q.    So you said you were called over there for an altercation. Just give me a synopsis of what happened that led you to come over there, *what you were told.*

A.    When I arrived on scene, the ambulance was there. Ms. Julie Mathis was in the ambulance. that – I made contact with her.  *She said that—*

Defense Counsel:    I'm going to object to hearsay, Your Honor.

Prosecutor:    *He can state what he learned through his investigation.*

Court:    Restate your question.

Prosecutor:    What reason was Ms. Mathis in the  ambulance?

A.    *She stated to me she had been*

Defense counsel:    Your Honor, what Julie stated is hearsay.

Prosecutor:    That would go to the truth of the matter asserted.

Court:    Overruled. *It's part of his initial investigation.*

A.    **Ms. Julie Mathis stated she had been hit** with a metal object **by a Ms. Staci Broome**.

11

. . . .

Q.     . . . I'm going to go to the last photograph here. What are we looking at in this photograph here?

A.     That's the ratchet.

Q.     Okay. And what's the significance of that ratchet?

A.     *That's what was used to strike Ms. –*

Defense Counsel:     Your Honor, I'm going to object. He was not there. He was not present when it occurred.

Court:     Overruled. *He can testify based on his investigation what he learned.* Restate your question, Mr. Purdum.

Q.     What's the significance of that ratchet? Why did you take a picture of it?

A.     **That's the weapon that was used to assault Ms. Julie Mathis.**

. . . .

Q.     Okay. And *based upon speaking with all the witnesses, collecting the evidence, in your experience as an investigator, what did you, what did you ascertain happened that night at the house?*

Defense Counsel:     Your Honor, I'm going to object. *He was not there* when the fight broke down.

Court:     Overruled. He can testify *about his investigation and what he learned through that investigation.*

A.     **I believe that Ms. Staci Broome assaulted Ms. Julie Mathis with that ratchet.**

Q.     And *what through your investigation leads you to believe that?*

A.     Due to the injuries Ms. Julie Mathis had, you know, missing a tooth. I believe she ended up with a skull fracture.

Defense Counsel: I'm going to object, Your Honor. That's not been introduced into evidence by and through any medical records.

Prosecutor: *He learned it through his investigation. He can testify to it.*

Defense Counsel: There have been no medical records to prove that, Your Honor.

Court: Sustained.

A. **I believe she was assaulted with the ratchet.** She had lacerations on her face, a tooth knocked out.

Q. All right. And what, did you ever come up with a motive or a reason that this would have happened?

A. I believe it stemmed from something previous

Q. Okay. Well, what, if you know?

A.. I believe it was something to do with –

Defense counsel: Your Honor, *I'm going to object to what he believes.*

Q. *Through your investigation –*

Court: Sustained.

Q. *Through your investigation, what did you learn as to why this could have occurred?*

A. Through Michael Mathis and Staci Broome's relationship.

(Emphasis added.)  Then, on cross-examination, the following exchange occurred:

Q. Officer Green, *you didn't witness the fight, did you?*

A. *No, sir.*

. . . .

13

Q.      So really, *Officer Green, really all the information you obtained in your investigation is just pure rank hearsay*, wouldn't you agree?

Prosecutor:    I object, Your Honor.

Court:          *Overruled.*

Q.      You can answer.

A.      *No, sir, I don't agree.*

Q.      Okay. But you didn't witness any of the altercations?

A.      No, sir.

Q.      And *all of the statements that you heard were from other people, correct?*

A.      *Yes, sir.*

Q.      And you really have *no independent knowledge of what took place that day?*

A.      *Just victim statements.*

Q.       Okay. And as a matter of fact, *you really don't know who attacked who first on that night, do you?*

A.      *I just went by what the victim stated.*

Q.      So you wouldn't know if Julie attacked Staci first and pushed her off the steps that night?

A.       *According to the statements, no, sir, that's not what I learned.*

Q.      But you don't know for a fact?

A.      Yes, sir.

Q.      Okay. *Are you aware that in Officer Brown's report he stated that –*

Prosecutor:    *Objection to hearsay.*

Court:          *Sustained.*

Q.          Okay, *but in the police report it stated that she had –*

Prosecutor:   *Objection to hearsay.*

Q.          —minor injuries.

Defense counsel:     *That's what was in the police report.*

Prosecutor:   *Well, if it's Officer Brown's report, then it's hearsay.*

Court:          Sustained. You can ask Officer Brown about that, Mr. Tullos

(Emphasis added.)

### B.     The law-enforcement-investigation exception does not apply.

¶28.   At trial, Broome's counsel repeatedly objected on the grounds of hearsay. The prosecutor and the trial judge justified the admissibility of Green's hearsay statements on the ground that the hearsay statements were "learned through his investigation." The State abandons that justification in this appeal. The State offers no authority to support the prosecutor's justification or the trial judge's ruling. Instead, the majority concedes that it was "improper to allow Green to repeat Julie's identification of Broome. This was clearly hearsay." Maj. Op. ¶ 14.

¶29.   Instead, for the first time on appeal, the State argues that "[s]tatements do not constitute hearsay when admitted to explain an officer's course of investigation or motivation for the next investigatory step by that officer." ***McCollum v. State***, 372 So. 3d 980, 988 (Miss. 2023) (internal quotation marks omitted) (quoting ***Eubanks v. State***, 291 So. 3d 309, 322-23 (Miss. 2020)). Earlier, this Court clearly cautioned that there is a basis to allow law-

15

enforcement officers to testify as to what they heard, but it is a very narrow one. The Court held "[i]t is elemental that a police officer may show that he has received a complaint, and what he did about the complaint *without going into the details of it.*" **Swindle v. State**, 502 So. 2d 652, 658 (Miss. 1987) (emphasis added) (citing **Tolbert v. State**, 407 So. 2d 815 (Miss. 1981)). Thus, a law-enforcement officer as a witness *must be very careful* to only "explain an officer's course of investigation or motivation for the next investigatory step by that officer." **McCollum**, 372 So. 3d at 988 (emphasis added) (internal quotation mark omitted) (quoting **Eubanks**, 291 So. 3d at 322-23).

¶30. If the admonition in **McCollum** and **Swindle** had been followed here, the prosecutor's should have only elicited the answer—"Ms. Julie Mathis stated she had been hit with a metal object." Under that scenario, I agree with the majority that only a portion of Investigator Green's testimony would have been within the boundaries of the Court's caution and specific instructions. This would have allowed Investigator Green to properly explain his "course of investigation or motivation for the next investigatory step by that officer" as nonhearsay. **McCollum**, 372 So. 3d at 988 (internal quotation mark omitted) (quoting **Eubanks**, 291 So. 3d at 322-23). Then, Green could have properly explained his next step— why he looked for the metal object.

¶31. The majority is correct to find that it "was improper to allow Green to . . . identif[y] . . . . Broome. This was clearly hearsay." Maj. Op. ¶ 14. Officer Green's identification of Broome as the guilty assailant was not permitted under **McCollum** and **Swindle**. The identification was inadmissible hearsay. MRE 802.

16

¶32. Nevertheless, the majority also concludes that "this error is clearly harmless[.]" Maj. Op. ¶ 14. I concur with the majority's finding that Green's testimony was "clearly hearsay" but I find there is more than just one instance of improper hearsay allowed in Investigator Green's testimony. But, I disagree with and dissent from the majority's conclusion that the error was harmless.

### C. Investigator Green's improper testimony was not harmless error.

¶33. In *Clark v. State*, 891 So. 2d 136, 140–41 (Miss. 2004) (emphasis added) (first and third alteration in original), this Court offered the following guidance:

> Having found that the admission of Barnes's statement was error, we must now consider whether that error is sufficient to require reversal. The United States Supreme Court has explicitly "reject[ed] the notion that a *Bruton* error[2] can never be harmless. '*[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials.*" *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1565, 1570, 36 L. Ed. 2d 208 (1973) (emphasis added). That is, *the Constitution does not guarantee a perfect trial, but it does entitle a defendant in a criminal case to a fair trial*. *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986). A *Bruton error is harmless "where the testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury*." *Brown*, 411 U.S. at 231, 93 S. Ct. 1565.

Also, in *Veasley v. State*, 735 So. 2d 432, 437 (Miss. 1999) (alterations in original) (emphasis added) (citations omitted), this Court explained how we should consider the concept of harmless error and ruled:

---

2 The Court recognized that *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968), required that "the prosecution should not offer, and the trial judge should not admit, in evidence, incriminating statements of a co-defendant (implicating the defendant) during the state's case-in-chief, since it could not be known whether the co-defendant would testify after the state rested." *Clark*, 891 So. 2d at 140 (quoting *Brown v. State*, 340 So. 2d 718, 721 (Miss. 1976)).

17

Having determined that error occurred we are now called upon to address whether it compels reversal. In this case it cannot be said that the admission of the hearsay testimony was harmless beyond a reasonable doubt. "*To apply the harmless error analysis . . . . this Court must determine whether the weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing admission of [the] evidence.*"

¶34.  The ***Veasley*** analysis is whether the "weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing admission of [the] evidence." ***Id.*** (alterations in the original) (internal quotation mark omitted) (quoting ***Fuselier v. State,*** 702 So. 2d 388, 391 (Miss. 1997). This Court should carefully consider the "harm done by allowing the admission of [the] evidence." ***Id.*** (internal quotation mark omitted) (quoting ***Fuselier***, 702 So. 2d at 391). This requires that we start with the evidence that was improperly admitted. ***Id.***

¶35.  Investigator Green testified to three significant statements that were inadmissible because he had no personal knowledge of the facts,[3] were inadmissible as hearsay,[4] or were inadmissible as improper lay opinion.[5] First, Investigator Green was allowed to identify the

---

[3]  Mississippi Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

[4]  Mississippi Rule of Evidence 802 provides that "[h]earsay is not admissible except as provided by law."

[5]  Mississippi Rule of Evidence 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: **(a)** rationally based on the witness's perception; **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

defendant as the assailant—"*Ms. Julie Mathis stated she had been hit with a metal object by a Ms. Staci Broome.*"  Second, Investigator Green was allowed to identify the weapon used—the rachet was "*the weapon that was used to assault Ms. Julie Mathis.*"  Third, Investigator Green was allowed to testify with certainty as to what happened and who did it—"*I believe that Ms. Staci Broome assaulted Ms. Julie Mathis with that ratchet.*"

¶36.    Investigator Green's own testimony indicated that he had no personal knowledge of any of these statements.  Instead, all of these statement were based on out-of-court statements he heard from others, and they were offered for the truth of the matter asserted.  And Green was asked to give an improper lay or expert opinion, which should not have been allowed.

¶37.    Each of these statements was prejudicial and harmful to Broome. "This Court has consistently condemned the practice of undertaking to bolster up the testimony of a witness on the stand, and to strengthen his credibility by proof of his declarations to the same effect as sworn to by him out of court." *Anderson v. State*, 171 Miss. 41, 156 So. 645, 647 (1934). There, the investigating officers were allowed to testify that they took the defendant to the victim who was in bed recuperating from being shot and that the victim identified the defendant. *Id.* The *Anderson* Court reversed the conviction stating, "[t]he testimony of [the officers] under the circumstances should not have been admitted." *Id.*

¶38.    The most evident ground for unfairness was the fact that while the State was allowed to elicit clearly hearsay testimony from  Investigator Green about "what he learned through his investigation," when defense counsel tried to do the same he was denied the same opportunity. This inconsistency by the trial court indicates the unfairness and significance

19

of the harm to Broome's defense.

¶39. The majority offers only two reasons for its conclusion that this "error is clearly harmless beyond a reasonable doubt." Maj. Op. ¶ 14. First, the majority states that "it was improper to allow Green to *repeat* Julie's identification of Broome." Maj. Op. ¶14 (emphasis added). The common definition of "repeat" is "to utter or say again." *The American Heritage Dictionary of the English Language* 1102 (1st ed. 1981). Investigator Green did not "repeat" Julie's identification of Broome. Green was the first witness the jury heard. He set the stage. He told the jury that Broome assaulted Mathis with a rachet. Said differently, Green told the jury what happened and who did it. The only problem was that he had no personal knowledge, MRE 602, based his testimony on inadmissible hearsay, MRE 802, and gave improper opinion testimony, MRE 701.

¶40. The second reason the majority offered for harmless error was because "Julie and Amber both identified Broome as the attacker at trial and no evidence was offered to the contrary . . . this error is clearly harmless beyond a reasonable doubt." Maj. Op. ¶ 14. This is a mischaracterization of Amber's testimony.

¶41. Amber's testimony conflicted with her statements to law-enforcement. Amber consistently testified that Julie instigated the fight. Amber said that Julie "opened the door . . . and Julie pushed her [Broome] back. She fell onto her back." Amber described it as "a pretty good fall." Amber testified repeatedly that Julie made the first physical contact. Then, according to Amber, Broome picked up a hammer and beat on the door. There was no testimony that Broome hit Julie with the hammer. Instead, Amber testified that, when Julie

20

opened the door, they started fighting. Amber testified that Julie was on top of Broome and they were both throwing punches. It was during this scuffle that Broome picked up a "wrench" and hit Julie "in the face multiple times." Then, Amber said that Broome "fell back and then Julie fell on top of her." With Julie on top of her, Broome "got the metal flashlight and hit Julie with it."

¶42. Amber also admitted that her testimony at trial conflicted with her statements to law-enforcement officers the night of the incident. Amber admitted that she told law-enforcement officers the night of the incident that Julie was the aggressor and Broome did nothing wrong. Amber admitted that she told Officer Hosey that "Julie Mathis started the altercation."

¶43. Julie denied that she initiated the fight. But she did state that when "we were on the ground she was punching me and I was punching her."

¶44. Michael Mathis testified that he did not see who or what started the fight. He testified he did not see either Julie or Broome throw a punch. He agreed with the defense counsel's characterization that they were "tussling." Michael Mathis offered no real evidence to support the prosecution or the defense. He admitted that Broome was not happy with Julie because Julie had talked ugly to her dog and had taken pictures of her car. Likewise, Julie was not happy with Broome because her father, while still married to Julie's mom, was having a relationship with Broome.

¶45. Under the *Veasley* analysis, we must also "determine whether the weight of the evidence against [the defendant] is sufficient to outweigh the harm done by allowing

21

admission of [the] evidence." *Veasley*, 735 So. 2d at 437 (alterations in the original) (internal quotation mark omitted) (quoting *Fuselier*, 702 So. 2d at 391). When I undertake this analysis, I find that the harm done by the inadmissible evidence was significant. Also, when I consider the weight of the evidence against the defendant, I find that Green's testimony was inadmissible; Julie's testimony supported the verdict; Michael's testimony neither supports the verdict nor exonerates Broome; and Amber's testimony, at best, was conflicting.

¶46. In *Veasley*, the Court concluded that

> The only other evidence regarding the sexual abuse was S.K.'s testimony and the testimony as to what S.K. told the examining physician. Without the testimony of the social worker and the Sheriff to bolster S.K.'s version of the events, this case amounts to S.K.'s word against that of her mother and stepfather.

*Id.* This Court then affirmed the Court of Appeals' decision that reversed the trial court's judgment and remanded the case for a new trial. *Id.*

¶47. The same analysis applies here. If you take out Investigator Green's testimony, the evidence in this case is simply based on Julie's testimony. Investigator Green's testimony only bolstered Julie's testimony.

¶48. If we look at the guidance from *Clark*, 891 So. 2d at 141 (internal quotation mark omitted) (quoting *Brown*, 340 So. 2d at 721), we must consider whether "the testimony erroneously admitted was merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." As discussed above, it was not "merely cumulative of other overwhelming and largely uncontroverted evidence properly before the

22

jury." *Id.* (internal quotation mark omitted) (quoting *Brown*, 340 So. 2d at 721). Like the *Veasley* analysis, the *Clark* analysis favors not finding harmless error.

¶49. In conclusion, Investigator Green's testimony was not "clearly harmless beyond a reasonable doubt." Maj. Op. ¶ 14. Investigator Green did not simply "repeat" what the other witnesses said. There was conflicting testimony of who initiated the fight. There was evidence they were fighting and punching each other before Julie was hit with the rachet. Therefore, I respectfully dissent from the majority's conclusion that admission of Investigator Green's testimony was harmless error. Instead, it is abundantly clear that the trial court erroneously admitted Investigator Green's hearsay statements, and his testimony allowed the State to unfairly bolster Julie's testimony, which prejudiced Broome.

> ## II.     Whether the trial court erred by allowing opinion testimony from a lay witness regarding the ultimate issue in the case.

¶50. The majority does not address this issue, finding "ample credible evidence of aggravated assault presented by the State." Maj. Op. ¶ 23.

¶51. The general rule is that "hearsay testimony obtained by an officer in conducting an investigation is inadmissible." *Bridgeforth v. State*, 498 So. 2d 796, 800 (Miss. 1986) (quoting *Roberson v. State*, 185 So. 2d 667 (Miss. 1966)). The State's very first witness was a law-enforcement officer who was repeatedly allowed to testify about matters outside of his personal knowledge and based solely on inadmissible hearsay. He was allowed to offer an opinion on the ultimate question. Mississippi Rule of Evidence 701(a) provides that a witness may give testimony "in the form of an opinion" only if his opinion was "rationally based on the witness's perception[.]" Investigator Green's testimony was not "rationally

23

based on [his] perception." MRE 701(a). Instead, it was based primarily on what he was told by someone else.

¶52.    Also, I have seen no cases in which a law-enforcement officer was allowed to testify as a Rule 702 expert witness in a criminal trial simply based on what he heard from others. The State did not ask the trial court to accept Green as an expert witness, and the State did not follow Rule 702 procedure to establish that Officer Green was "qualified as an expert by knowledge, skill, experience, training, or education." MRE 702. Further, the State failed to make the requisite showing that his opinions were relevant or "reliable" as required by Rule 702. MRE 702 advisory comm. n.

¶53.    While there were other witnesses who testified as to Broome's guilt, Investigator Green should not have been allowed to testify as to inadmissible hearsay or offer his opinion. Because of the prominence of Investigator Green's testimony as a law-enforcement officer and the inadmissible testimony, I cannot agree that his inadmissible hearsay and opinion evidence were harmless error.

¶54.    I respectfully concur in part and dissent in part. I concur with the majority's finding that Green's identification of Julie was clear, improper hearsay, but I dissent from the majority's conclusion that the error was harmless. I would reverse and remand this case for a new trial based on properly admissible evidence consistent with the Mississippi Rules of Evidence.

**SULLIVAN, J., JOINS THIS OPINION.**